ELSIE RODRÍGUEZ RETAMAR, demandante y recurrida, *v.* DR. ANTONIO MALDONADO, demandado y recurrente [Peticionario].

*Número:* O-71-58          *Resuelto:* 3 de mayo de 1972

*Charles R. Cuprill,* abogado del recurrente; *Héctor Lugo Bougal, Delia María Auffant* y *Delia Lugo Bougal,* abogados de la recurrida.

PER CURIAM: El peticionario dentista fue demandado en daños y perjuicios por una alegada indebida e innecesaria extracción de dos molares de la boca de la recurrida por lo cual lo responsabilizó el Tribunal de Distrito, Sala de Ponce, en la suma de $2,200.

El Tribunal Superior, Sala de Ponce, desestimó la apelación del peticionario porque los autos del caso "demuestran que . . . los daños sufridos por la demandante-apelada tuvieron su génesis en la negligencia profesional de demandado . . . nada hay que justifique el alterar las determinaciones del tribunal sentenciador."

Debemos considerar las anteriores adjudicaciones a la luz de las normas que con respecto a la prestación de servicios médicos relacionamos en *Rivera* v. *E.L.A.,* 99 D.P.R. 890 (1971), las que también aplican a los dentistas. *Guzmán* v. *Silén,* 86 D.P.R. 532 (1962).

Como la prueba no ha demostrado que las actuaciones del peticionario contraviniesen las referidas normas, la demanda en este caso no puede prosperar y en tal virtud debe dejarse sin efecto la sentencia dictada por el Tribunal Supe-

rior, en 4 de febrero de 1971 que declaró sin lugar la apelación de la que dictó el Tribunal de Distrito, Sala de Ponce, en 18 de mayo de 1970. Esta última debe revocarse.

El Tribunal de Districto concluyó, en síntesis, que:

1.—En marzo de 1968, recurrió la recurrida al peticionario debido a que sufría un fuerte dolor en el lado derecho del rostro. Le extrajo una muela luego de tomarle una radiografía y como el dolor de continuaba, días después, en ese mismo mes, le extrajo otra. Como el dolor le continuaba volvió a donde el peticionario pero éste se negó a atenderla.

2.—Entonces la recurrida solicitó los servicios del cirujano dental, Dr. Meléndez, en abril de 1968, quien testificó que la radiografía que le tomó de la boca reveló (a) que tenía un cordal impactado lo cual produce mucho dolor; (b) que le habían extraído dos molares no más de dos meses antes; la trató, pero en 15 de julio de 1968 se vio obligado a extraerle el cordal; (c) que la dentadura de la recurrida estaba en condiciones excelentes.

3.—Basándose en el testimonio del Dr. Meléndez, los dos molares extraídos estaban en buenas condiciones.

4.—La intervención del peticionario agravó y ocasionó daños a la recurrida que provinieron de la negligencia original del peticionario y que fueron corregidos posteriormente por la intervención del Dr. Meléndez, lo que hace al peticionario responsable de los daños que sufrió la recurrida consistente de fuertes dolores físicos, así como angustias mentales y morales.

5.—Como cuestión de hecho que los daños sufridos por la recurrida fueron el resultado de la negligencia, falta de cuidado e impericia del peticionario, quien no tomó adecuadamente la radiografía a la recurrida, lo cual hubiese puesto de manifiesto la existencia del cordal que causaba el dolor, lo cual a su vez motivó que dicho peticionario extrajese innecesariamente dos molares a la recurrida. Así mismo que el peticionario fue igualmente negligente al no advertir que el trata-

miento que él estaba ofreciendo a la recurrida no arrojaba resultados favorables.

Durante la vista del caso prestó testimonio el peticionario, pero su declaración no le mereció crédito alguno al tribunal juzgador.

■ De entrada señalamos que gran parte de la prueba consiste del testimonio de peritos dentistas. De manera que al apreciarla no estamos en forma alguna impedidos por el juicio del Tribunal de Distrito de que el testimonio del peticionario en su capacidad de perito no le merecía crédito alguno. Dijimos en *Concepción Guzmán* v. *A.F.F.*, 92 D.P.R. 488, 495 (1965), que ". . . este Tribunal está en libertad de adoptar su criterio propio en la apreciación de la prueba pericial."

El tribunal no hace referencia alguna en sus conclusiones con respecto al testimonio del perito Dr. Meléndez en su contrainterrogatorio al efecto de que de las muelas extraídas no sabía nada; que nunca vio los morales extraídos por el recurrente; no conocía su condición y que no podía declarar si el dolor que la recurrida sentía cuando fue a ver al peticionario era del cordal o de los morales porque eso era muy difícil[1] y de que pudo haber tenido dolor en otras piezas así como en el cordal.[2]

---

[1] Estas manifestaciones aparecen del pliego de objeciones a la Relación del Caso, objeciones que, previa vista, el Tribunal de Distrito aceptó mediante su resolución de 11 de septiembre de 1970.

[2] Se hace necesario observar que solicitadas las cintas magnetofónicas de la vista del caso en sus méritos en el Tribunal de Distrito, resultaron ininteligibles. La persona encargada del control de la máquina de sonido indudablemente fue negligente al no pasar la cinta magnetofónica al final de cada rollo en retroceso a su rollo original de manera que al pasarse en otra máquina la grabación fuese inteligible. La Administración de los Tribunales debe llamar la atención a las personas encargadas de las grabaciones en el Tribunal de Primera Instancia de que sigan la práctica que acabamos de explicar así como la de hacer pruebas periódicas durante el proceso de grabación con el fin de verificar la fidelidad de la grabación que se está llevando a cabo.

Según la relación del caso hecha por el juez de distrito sentenciador, el peticionario testificó que ". . . ella se presentó a solicitar mis servicios, dijo y que tenía un fuerte dolor en el lado derecho inferior de la cara, luego de yo hacerle las pruebas de rutina, diría yo que hacemos todos, tales como tomarle placas,(³) tomarle prueba de percusión, esto consiste en darle unos toquecitos a la pieza que uno sospecha en esos momentos, luego de hacerle pruebas técnicas, que son pruebas de frío y color, llegué a la conclusión que la primera molar de este lado inferior derecho, presentaba una obsturación en oro, un relleno. Ante este cuadro clínico . . . y usando mis conocimientos con toda buena fe, decidí y llegué a la conclusión de que mi diagnóstico era de que la extracción de aquel molar era la solución al dolor intenso para alivio del dolor intenso que la paciente sentía en aquellos momentos." Con respecto a la segunda extracción testificó el recurrente que "En esa fecha presentaba otro dolor . . . en ese lado inferior derecho a lo cual después de diferentes pruebas, llegué a la conclusión y bajo su consentimiento le extraje esa pieza, la segunda molar. Esa segunda molar presentaba obsturación en plata, basante profunda . . . me vi obligado a extraerle esa muela . . . le tomé las pruebas de rutina . . . llegamos a la conclusión de que esa segunda molar era la que le estaba ocasionando el dolor en ese momento." Luego testificó que "A los tres o cuatro días fue que ella me llamó por teléfono, quejándose de que estaba recluida en cama y que tenía un dolor intenso en ese lado, a lo cual acudí a su casa, al lecho de enferma y encontré, después de examinarle la boca, encontré que lo que presentaba era un cuadro típico de alveolitis localizada, que es una situación . . . . Alveolitis es una infección del alveolo, o sea, don [sic] estaba incrustado el molar, que por alguna

---

(³)Es significativo que la recurrida, quien tenía el peso de la prueba, no requiriese que el recurrente produjese e identificase esas placas pues es posible que hubiesen contenido alguna indicación sobre el estado de los dos molares que el recurrente le extrajo a la recurrida.

razón u otra y no se han podido expecificar [*sic*] todavía las razones, el paciente pierde el coágulo o no se llega a formar el coágulo de sangre de la primera etapa de la cicatrización de toda lesión en algún cuerpo vegetal o animal y por 'h' o por 'r' pierde ese coágulo se lava con los fluídos de la boca y queda expuesto al alveolo a las bacterias bucales y entonces ocurre una necrosis, una occiomielitis localizada, que es lo más doloroso que puede haber. . . . Le receté calmantes analgésicos y entonces le dije que me fuera a ver, porque eso requiere un tratamiento en mi oficina, a lo cual ella nunca asistió." Explicó, además, que había notado el cordal pero que cuando hizo las extracciones, éste no estaba impactado sino que estaba surgiendo ". . . cubierto con encía en la parte oclusal"; que las radiografías del Dr. Meléndez no mostraban impedimento alguno a que el cordal surgiese, y añadió ". . . Nada más la encía y eso la fisiología lo explica de que va a surgir."

Testificó el peticionario que según su récord de citas admitido en evidencia, realizó la primera extracción en 22 de septiembre de 1967 y la segunda en 28 de marzo de 1968. La prueba más confiable, a nuestro juicio, es que hubo este intervalo de unos seis meses entre estas extracciones. Mientras la recurrida no recuerda en qué fecha en marzo de 1968 se le hizo la primera extracción, el récord del peticionario demuestra que en ese mes se le hizo sólo la segunda extracción; que la primera se le hizo en 22 de septiembre de 1967. En apoyo de la fecha de la primera extracción, testificó el peticionario que de la radiografía del Dr. Meléndez surge ". . . una cicatrización, la distancia entre el cordal a la segunda premolar, del lado menor . . . . Es inconcecible [*sic*] si medimos, que dos piezas quepan en ese lugar, a lo cual yo testifico de que no es posible que yo la haya hecho una extracción y luego la otra inmediatamente, como se especifica en la declaración de la demandante, puesto que, de acuerdo con la fisiología humana, todas las piezas tienden a moverse hacia la línea misial o línea del centro del esqueleto humano, hacia la línea todos

tienden, por lo tanto en esta fecha el Dr. Meléndez le tomó estas placas, que se supone fue en abril 19, y no recuerdo más. El cordal había emigrado tanto hacia acá que no es posible que haya habido dos piezas reciente antes, o sea, que tardó seis meses distintos, mucho más de seis meses en una extracción a la otra."

■ No hubo prueba demostrativa de que el tratamiento que el peticionario prestó a la recurrida según su anterior testimonio, fuese otro distinto o que variase sustancialmente del mismo.

Tampoco hubo prueba alguna de que el tratamiento del peticionario que culminó en las dos extracciones (1) fuese in apropiado, negligente, inadecuado y que mostrase una falta de haber ejercitado un grado de cuidado razonable; (2) no conforme con la práctica prevaleciente en la comunidad, es decir, que no llena las exigencias profesionales reconocidas, o sea, la práctica aceptable profesionalmente hablando en cuanto a casos como el que nos ocupa.

De manera que la presunción de que se ejercitó un cuidado razonable en el desempeño de las funciones del peticionario en este caso no ha sido controvertida. Como dijimos en *Ramos Orengo* v. *La Capital*, 88 D.P.R. 315, 328 (1963), la prueba debió demostrar, y no lo demuestra en este caso, que existía algo más que una mera posibilidad de que el daño se debiera al incumplimiento por el dentista de su obligación.

■ La conclusión del Tribunal de Distrito de que "Sin duda alguna, en el caso de la demandante el dolor que ella sentía estaba relacionado con el cordal." no encuentra apoyo en la prueba, sino que sólo puede deducirse de meras posibilidades, conjeturas y sospechas. El perito de la recurrida no pudo asegurar que el dolor producido por el cordal era el que padecía la recurrida cuando fue a tratarse con el peticionario. Por el contrario testificó que era muy difícil declarar de dónde provenía ese dolor, si del cordal o de los morales extraídos. El

hecho de que la recurrida continuara sufriendo dolor en el lado derecho de la cara aun después de la segunda extracción y que el dolor que la llevó a ver al Dr. Meléndez cesó cuando éste le extrajo el cordal, no es, por sí solo, demostrativo de que el peticionario no encontrase de su examen que el caso requería la extracción de los dos molares en cuestión y de que el peticionario fuese culpable de una práctica profesional mala, negligente y descuidada. En cuanto al cordal, el perito de la recurrida testificó que la encontró impactado, es decir, cubierto con hueso mandibular por lo que no podía salir; que en ese caso había que extraerlo pues produce mucho dolor. Por el contrario, el peticionario, testificando como su propio perito, dijo que notó el cordal cuando trató a la recurrida en relación con la primera extracción.

Dentro de las posibilidades y conjeturas prevalecientes en este caso, ya que los peritos no aclararon a cabalidad la cuestión, existen tres posibilidades, o sea, de que la recurrida padeció de un solo dolor proveniente de un cordal impactado, o de otros dolores provenientes de molares enfermos, o de dolores causados por el cordal y por las dos piezas que el peticionario le extrajo que requirieron las tres extracciones que en total sufrió.

Como no procede responsabilizar al peticionario a base de meras posibilidades, *deben revocarse las sentencias dictadas en este caso por el Tribunal Superior y el Tribunal de Distrito, Salas de Ponce, y desestimarse la demanda.*

El Juez Presidente, Señor Negrón Fernández, no intervino.