Luis Felipe García y Otros, demandantes y recurrentes, *v.* Autoridad de las Fuentes Fluviales de Puerto Rico, demandada y recurrida; Luis Felipe García et al., demandantes y recurridos, *v.* Autoridad de las Fuentes Fluviales de Puerto Rico, demandada y recurrente.

Números: R-69-283,  Resueltos: 6 de febrero de 1975
R-69-285

*Luis A. Lugo, Jr.,* abogado de la Autoridad de las Fuentes Flu-
viales de Puerto Rico; *Carlos J. Ortiz* y *René Benítez,* aboga-
dos de Luis Felipe García y otros, demandantes.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del
Tribunal.

En nuestro sistema de adjudicación de controversias,
bajo las normas evidenciarias y procesales vigentes, todo
proceso de presentación de prueba representa un esfuerzo ten-
dente a reconstruir en la forma más fiel y exacta los hechos
acaecidos fuera del escenario judicial. De ordinario, tal pre-
sentación se efectúa meses o años después de acontecidos los
hechos por lo que el factor inexorable del tiempo interviene
con la memoria afectando las imágenes, percepción, personas
y sitios. Ingredientes adicionales tales como el grado de
inteligencia del testigo, su facilidad o dificultad para ver-
balizar y explicar, el nerviosismo natural que genera la sala
de un tribunal, las expectativas de una confrontación de lo
atestado con el contrainterrogatorio, el interés en el desenlace
final del caso y un sinnúmero de imponderables, imponen

sobre los tribunales de instancia la más delicada función (¹) del quehacer judicial humano: el descubrir la verdad haciendo el mayor esfuerzo en dirimir prueba conflictiva y en muchas ocasiones incompleta.

La realidad previamente expuesta cobra mayor importancia tratándose de casos de incendio, como el que nos ocupa, en que por la naturaleza del elemento envuelto, la génesis del suceso regularmente resulta difícil de determinar, perpetuar y producir subsiguientemente ante los tribunales.

■ Ante esta dificultad, es regla auxiliadora en el proceso evaluativo de formar conciencia judicial de hechos, el análisis de perspectiva integral de la prueba, atribuyéndole mayor valor probatorio a la evidencia aportada que contiene la característica de garantía circunstancial de veracidad entre las cuales se destaca la que posee ingredientes de espontaneidad y contemporaneidad con el suceso. Las muchas dudas que surgen con respecto a la credibilidad que merece un testigo o a la posibilidad de que su relato sea lo más cercano y probable a la realidad extrajudicial ya pasada, son susceptibles de ser salvadas y esclarecidas mediante este enfoque.

Con estas consideraciones, pasemos a relacionar las circunstancias presentes en el caso que nos ocupa. El 1ro. de agosto de 1966, aproximadamente a las 11:00 p.m., se desarrolló un incendio que destruyó varias casas situadas en la esquina formada por las Calles Bilbao y Concepción de la barriada Los Corozos, Santurce, Puerto Rico, como consecuencia del cual recibió intensas quemaduras el señor Luis Felipe García, propietario de la casa inicialmente quemada y muriendo por carbonización uno de sus residentes.

Bajo la alegación de que el siniestro se originó en los alambres eléctricos y se debió a la culpa y negligencia de la Autoridad de las Fuentes Fluviales de Puerto Rico—en adelante denominada *Autoridad*—se presentaron varias deman-

---

(¹) *Malavé* v. *Hosp. de la Concepción*, 100 D.P.R. 55 (1971).

das en reclamación de daños y perjuicios. Consolidadas las mismas, se ventiló el proceso ante el Tribunal Superior, Sala de San Juan, y recayó sentencia imponiendo responsabilidad a dicha entidad y condenándola a satisfacer la suma total de $26,599.00, las costas del proceso y $1,000.00 de honorarios de abogado.

Ambas partes acudieron en revisión; los demandantes en el recurso R-69-283 impugnan la suficiencia de la cuantía y en el recurso R-69-285 la demandada cuestiona la determinación de responsabilidad.

Resulta lógico que consideremos en primer término los méritos de la revisión interpuesta por la Autoridad pues de la conclusión de responsabilidad depende el análisis ulterior de la cuantía concedida. Señala y discute conjuntamente seis (6) fundamentos tendentes a desvirtuar las determinaciones de hechos de la sala sentenciadora los cuales giran básicamente sobre la apreciación de la prueba.

Las determinaciones de hechos cuestionadas son las siguientes:

"2—[El] fuego fue causado como consecuencia de chispas originadas en los alambres eléctricos instalados y bajo el control de la demandada los cuales suministraban energía eléctrica a la casa del demandante Luis Felipe García. Dichas líneas desde el poste a la toma de la casa del demandante Luis Felipe García estaban deterioradas, sin protección aisladora, combeados en exceso, lo que les permitía rozar.

3—La inspección y mantenimiento de las líneas eléctrica de la barriada era deficiente y las instalaciones eléctricas objeto de ésta acción datan de una fecha mayor de 15 años sin que dicha instalación fuera inspeccionada ó mantenida adecuadamente.

4—El testigo Ramón Ortiz, electricista práctico, quién ha residido por largos años en la barriada donde ocurrió el fuego y a cuyo testimonio le da crédito el Tribunal declaró que la instalación eléctrica de la barriada Los Corozos, incluyendo específicamente aquellas envueltas en éste pleito, se encontraban para la fecha del incendio en completo estado de abandono y deterioro y que los cables estaban flojos y combeados y que en sus largos

360

años en la barriada nunca observó que la demandada inspeccionara dichos cables.

.    .    .    .    .    .    .    .

5—Las partes produjeron prueba pericial la cual confligió en sus extrenos [*sic*] esenciales, alegando la demandada la imposibilidad de que la ocurrencia del siniestro fuera causada en la forma y manera expuesta por la teoría del demandante, mientras que ésta [*sic*] por su parte, en la exposición de la cuestión técnica en controversia, adujo *la posibilidad* de que tomando en consideración la condición de deterioro de los elementos aisladores, el fuego *pudo haberse* ocasionado por las chispas en los cables *habiéndose podido* proyectar el fuego hacia la casa del demandante. . . .

La Corte le otorga entero crédito a la teoría pericial del demandante por los elementos de probabilidad de su enfoque y además por estar éstos confirmados por los testigos presenciales del inicio del fuego, el señor Eduardo Batista y la señora Irma Serrano, cuyos testimonios igualmente merecen la credibilidad del Tribunal. (El señor Batista declaró haber presenciado que los cables eléctricos que conducían corriente a la casa del demandante estaban encendidos y vió además cuando el fuego de los alambres se propagó a la casa de dicho demandante)." (Bastardillas nuestras.)

▉ El estudio sereno de las transcripciones de evidencia elevadas y la prueba documental sometida nos convencen que erró el tribunal de instancia al determinar que el siniestro se originó en los cables eléctricos pertenecientes a la Autoridad demandada e imponerle responsabilidad. Conflictos irreconciliables en las versiones de los testigos presentados por los reclamantes, en unión a la regla de hechos físicamente improbable o imposible—que constituye una de las excepciones a la norma de abstención judicial apelativa en cuanto a las determinaciones de hechos consignadas por los tribunales de primera instancia—nos llevan a la anterior conclusión. *Burgos Quiñones* v. *A.F.F.*, 90 D.P.R. 613, 620–621 (1964); *Román Delgado* v. *Delgado Herrera*, 89 D.P.R. 428, 437 (1963).

Procede hacer un análisis de la prueba sobre el origen del incendio. Razonablemente mucho antes de que los demandantes contemplaran radicar una demanda judicial contra la Autoridad, a raíz del incendio intervinieron tres agencias del Estado ajenas a aquella y que normalmente realizan investigaciones en tales casos, a saber: la Policía de Puerto Rico, el Ministerio Fiscal y el Cuerpo de Bomberos.

El Informe de la investigación practicada por la Policía, Exhibit 3 de la demandada, preparado *un día* después del incendio, relaciona lo siguiente en lo pertinente:

"*Ayer* 8-1-66 a las 10:45 P.M. sitio Calle Concepción 48, Pda. 20, Santurce *se originó un incendio según revela la investigación realizada, este comenzó en un sofá de esta residencia, donde informó el Sr. Luis Felipe García Beltrán, dejó un caracol de los que se usan para expantar los mosquitos,* este señor recibió quemaduras de cuidado al tratar de sacar el sillón en llamas, fue recluido en el Centro Médico de Río Piedras y atendido por el Dr. Dubock, como resultado del incendio que se propagó rápidamente a las casas cercanas a esta, recibió quemaduras fatales el Señor Genaro Rodríguez Laureano de 55 años de edad, natural de Ciales, quien murió a consecuencia de estas." (Bastardillas nuestras.)

De rigor es acentuar que este documento, preparado al día siguiente del incendio, hace constar que en dicho momento el demandante Luis Felipe García Beltrán había manifestado y admitido su parecer de que el fuego había comenzado en el interior de la casa por razón de un caracol que quema para ahuyentar los mosquitos. (²)

Además se presentó en evidencia (Exhibit VII) una fotografía tomada por la Policía esa misma noche, que ilustra claramente cómo quedó afectada la residencia de los esposos

---

(²) Ello destruye la tesis que los demandantes sugieren—sin elaboración propia ulterior—en la pág. 10 de su alegato de que la condición mental del señor García Beltrán no era la adecuada al momento de prestar a un fiscal, durante su estadía en el hospital, la declaración jurada más adelante relacionada.

García-Tejada, en particular el frente de dicha estructura que da hacia la calle Concepción, con poca muestra de haber sido alcanzada por las llamas ni de destrucción; y el poste de alumbrado eléctrico perteneciente a la Autoridad demandada que no revela daño alguno o quemadura aparente. De su examen inferimos razonablemente que el fuego tuvo su apogeo en el centro de dicha estructura y no afectó el poste en cuestión.

Ante el *Ministerio Fiscal*, representado por el Fiscal Miguel A. Montalvo, la codemandante Herminia Tejada —esposa del demandante Luis Felipe García—a las 4:00 de la madrugada de la noche del siniestro (T.E. pág. 22 de fecha 1-6-66), declaró bajo juramento:

"Anoche 1 de agosto de 1966 nos acostamos temprano mi esposo y yo. Ya hacía bastante tiempo que estabamos durmiendo cuando de momento yo me desperté y *vi todo el seto de la parte norte de la sala todo en llamas y los muebles todos estaban en llamas*. Llamé a mi esposo Luis Felipe García y cuando se levantó *trató de coger una butaca* que estaba incendiada pero entonces él empezó a decir que estaba quemado. . . . Yo iba gritando 'fuego, fuego, levántense, que hay fuego'. . . .

P. *Entonces, el fuego empezó en su casa?*
R. *Si señor.*
P. La primera que vio la llamas fue usted?
R. Si señor." (Bastardillas nuestras.)

Esta declaración pone de manifiesto que la señora Tejada y su esposo estaban durmiendo mientras se desarrollaba el incendio y que al percatarse del mismo estaba en llamas el interior de la sala (muebles y techo).

Igualmente ante dicho funcionario el codemandante Luis Felipe García prestó declaración jurada([3]) *dos días* después del siniestro, exponiendo en lo relevante lo siguiente:

---

([3])En la pág. 8 del Alegato de los demandantes se aduce que por no haberse transcrito y elevado ante nos el testimonio del Fiscal Montalvo, debemos hacer caso omiso a esta declaración. El argumento no es válido habida cuenta de que el original de la misma fue presentado por la demandada y admitido en evidencia por el tribunal sentenciador (Exhibit 2),

"... P.  Como a que hora empezó ese incendio?

R. *Como a las 9:00 de la noche yo me acosté y nosotros usamos un caracol para los insectos y yo encendí el caracol y yo cogí y lo apagué y parece que al yo apagarlo alguna chispita del caracol yo no me di cuenta y brincó al sofá porque lo que estaba prendido era el sofá en la casa mía* y estabamos dormido y la doña se dió cuenta y me dijo aquí hay fuego y ahí me levanté y traté de coger el sofá, abrí la ventana y para tirarlo a la calle pero como la goma del sofá ardía tanto la flama me cogió en los brazos y en las piernas y todo el cuerpo y ahí me pasó la mano y me safé y cogí llamas.

P.  Como se llama su esposa?

R.  Herminia Tejada.

P.  Usted no pudo tirar el sofá cuando lo cogió?

R. *No pude por la llama me cogió a mi y me prendió el pelo y el cuerpo y ahí le dije a mi esposa me quemé y como aquella es una casa de madera y de polilla cogió fuego,* entonces yo salí por la puerta de atrás de la verja con mi esposa y los inquilinos también salieron, entonces llamamos a Berto a Feliciano y a Don Moncho que viven allí y le avisamos que había fuego.

P. *Usted me asegura que el incendio empezó en el sofá de su casa?*

R. *Sí,* señor.

P.  Antes de eso usted *no sintió explosión* u olor a gasolina?

R. *No, señor....* (Bastardillas nuestras).

El testimonio del señor García Beltrán complementa el cuadro descrito por su esposa antes relacionado, y sin lugar a dudas constituye dos días después una reafirmación de su versión original de que la noche del incendio utilizó y prendió un caracol; que lo que estaba encendido era el sofá; y de que con anterioridad a despertarse no había sentido ninguna explosión.

Del Servicio de Bomberos de Puerto Rico se presentó una Certificación (Exhibit 1 de los demandantes) que consigna que el incendio en cuestión

---

formando parte del legajo ante nuestra consideración. Tampoco le asiste la razón en cuanto a la declaración prestada por la señora Herminia Tejada pues constituye el Exhibit I de la demandada debidamente admitida. (T.E. pág. 22 de fecha 7-1-68.)

". . . comenzó en la casa 48 de la Calle Concepción, Pda. 20 de Santurce, propiedad del Sr. Luis Felipe García propagándose dicho incendio a seis casas adicionales con pérdidas calculadas en $30,485.00;

Que según *información* obtenida en el sitio del incendio, este se *inició en los alambres* que conducen la corriente desde un poste al contador de la casa 48 de la Calle Concepción, declarando algunos testigos que al llegar al contador éste explotó, propagándose el fuego por el seto norte de la casa; . . . ."

El documento recoge información referente a que algunas personas, con posterioridad al incendio, informaron de que éste se inició en los alambres de la demandada y que el contador explotó. Cabe destacar que aparte de lo inverosímil de que un contador explote, [4] ninguno de los testigos presentados subsiguientemente ante el tribunal de instancia como observadores de su origen, señalaron la ocurrencia de este fenómeno.

La prueba antes relacionada representa toda la evidencia pertinente sometida por las partes que contiene los ingredientes de espontaneidad y contemporaneidad con el siniestro. El remanente de la prueba en autos constituye la desfilada ante el tribunal sentenciador mucho tiempo después. Veámosla:

Para demostrar la responsabilidad de la Autoridad demandada a la par que desvirtuar lo jurado previamente por su esposo, Doña Herminia declara dos años después que la noche del incendio no se prendió un caracol repelente (T.E. pág. 5). Los demandantes presentaron además los testigos Wilson Avilés Rodríguez, Irma Serrano Márquez y Rafael Batista Ramos.

La evidencia refleja que el testimonio de Avilés Rodríguez no es suficiente para detectar el origen del incendio pues sobre el particular expresó que cuando salió al balcón ante los gritos

---

[4] Consúltese *Burgos Quiñones* v. *A.F.F.*, supra, que caracteriza la explosión de un contador como un fenómeno.

de su señora madre que gritaba histérica "fuego, fuego" fue que observó las llamas estando para entonces la casa incendiada (T.E. págs. 42–45). Sin embargo, de rigor es notar que de su testimonio se deduce que cuando estaba ardiendo el balcón del frente de la casa del Sr. García—en una etapa en que ya estaba desarrollado el incendio—es que percibe que los alambres ". . . estaban humeando en toda su extensión y de vez en cuando botaba chispa [*sic*]."

La testigo Irma Serrano Márquez tampoco apreció el origen del siniestro pues de su testimonio se desprende que el incendio ya se había desarrollado y estaba en su apogeo cuando notó el mismo. No obstante es significativo su relato de que lo que vio ". . . fue el balcón en llamas y los cordones prendidos en candela." El análisis de las fotografías en evidencia nos permite concluir que desde el lugar en que la testigo se encontraba al momento de percatarse del incendio no tenía ni podía tener una visión total de los alambres en cuestión.

El testigo Batista Ramos quien declaró que vio los cables cuando botaban candela azul de arriba hacia abajo, se contradice totalmente. Por vía de ejemplo atesta que el poste cogió fuego, lo cual fue negado por los testigos Irma Serrano y Wilson Avilés Rodríguez, y ubica a doña Herminia Tejada a su lado en el momento en que según él los cables están prendidos y la casa humeando, y acto seguido, al informarle a doña Herminia que va a localizar a los bomberos describe la casa envuelta en llamas. (T.E. pág. 5.) Este hecho es conflictivo e irreconciliable con el testimonio de doña Herminia quien como hemos visto, declaró ante el Fiscal que despertó estando el interior—seto y los muebles de la sala—en llamas.

Como veremos más adelante, confrontado el testimonio de Batista, al igual que los otros antes mencionados con la prueba de la demandada, se puede concluir razonablemente que dicha persona, de efectivamente haber visto los cables en las condiciones que relata, lo que percibió fueron las conse-

cuencias del incendio originado y en desarrollo dentro de la estructura.

Del análisis conjunto que precede se desprende que la prueba de los demandantes estuvo plagada de contradicciones no explicadas de carácter esencial, que arrojaban duda sobre la fidelidad de los hechos presentados en el escenario judicial. Así al terminar de presentar su caso, la propia prueba de los demandantes evidenciaba dificultad en poder precisar el punto específico en donde se originó el siniestro, apuntando más bien a que fue en el interior de la residencia de los esposos García-Tejada, con mayor probabilidad de que se debiera al incendiarse el sofá con el caracol de repeler mosquitos.

Igualmente dicha prueba indicaba la posibilidad de que las apreciaciones de candela y chispas en la toma eléctrica descritas por los testigos "presenciales" fueran el resultado del incendio ya en auge en el interior de la estructura y no por razón de los alambres eléctricos pertenecientes a la demandada. (5) No obstante lo débil de esta prueba el tribunal sentenciador descartó erróneamente la tesis de la Autoridad fundada en testimonio pericial. Sobre este extremo conocida es la regla de que estamos en las mismas condiciones que los tribunales de instancia para aquilatar su valor y a adoptar nuestro propio criterio: *Rodríguez Retamar* v. *Maldonado,* 100 D.P.R. 662, 665 (1972); *Portilla* v. *Carreras de Schira,* 95 D.P.R. 804, 812 (1968); *Ortiz Rodríguez* v. *A.F.F.,* 94 D.P.R. 546, 550 (1967); *Concepción Guzmán* v. *A.F.F.,* 92

---

(5) Lo expuesto demuestra el poco valor probatorio atribuible a lo consignado en la Certificación del Servicio de Bomberos de Puerto Rico admitida en evidencia, en el sentido de que ". . . según información obtenida en el sitio del incendio, este se inició en los alambres que conducen la corriente desde un poste al contador. . . ."

Obviamente la única base racional de la misma—ausentes testigos que real y directamente observaran el comienzo del siniestro—serían las expresiones, rumores y versiones típicas manifestadas por los curiosos y espectadores que atrae una conflagración de esta naturaleza, o en su defecto, el relato de impresiones u observaciones de personas cuando el incendio ya había comenzado y afectaba los cables eléctricos.

D.P.R. 488, 495 (1965).

La evidencia pericial establece claramente que de ordinario—comprobado ello en axiomas reconocidos de la ciencia de la ingeniería eléctrica—en instalaciones equipadas con fusibles protectores adecuados en los postes, como el que existía en el caso de autos, tan pronto se inicia una condición de corto circuito en la toma se queman o funden los fusibles por lo que se interrumpe inmediatamente el fluir de la energía eléctrica a través de los cables eléctricos. La rapidez—segundos o sus fracciones—con que este aditamento de protección actúa hace físicamente imposible o improbable que la temperatura en los cables inicie una flama en su aislación que sirva de ignición a la madera.

Ante la alternativa poco probable de que los fusibles no se fundan instantáneamente, de permanecer en contacto los cables, el calor generado sería de tal grado que eventualmente partiría los mismos. (T.E. págs. 7–25 de fecha 5-7-68.) Esta última tesis fue la que esbozó con vehemencia el perito de los demandantes (T.E. pág. 43 de fecha 5-1-68); sin embargo, no tiene apoyo en la prueba pues la misma demostró que los cables no partieron en momento alguno, siendo una mera especulación que ello ocurriese y más aún que partiesen en un punto más próximo a la pared de la estructura o vivienda que pudiera producir el contacto necesario para la ignición de ésta.

Distinto a lo débil de la prueba presentada por los reclamantes y a lo especulativo de la explicación pericial, la Autoridad estableció de manera racional y lógica lo remoto, por no decir imposible, de que el fuego se originara en los alambres eléctricos de su propiedad. [6]

---

[6] El testimonio de un testigo presentado por los demandantes nombrado Ramón Ortiz con el propósito de probar que las instalaciones eléctricas de la barriada Los Corozos estaban abandonadas por la Autoridad queda desvirtuado por un mero examen de las fotografías en evidencia y por su propia deposición. No fue presentado como testigo ocular del inicio del incendio.

■ Apreciada en su totalidad, la parte demandada no sólo controvirtió exitosamente la prueba de los demandantes, sino que demostró preponderantemente que la causa del incendio no se originó ni debió a defectos en sus instalaciones. Habiendo ausencia de relación causal entre el daño y las líneas eléctricas pertenecientes y bajo el control de la Autoridad, no existe responsabilidad alguna. *Casiano Cruz* v. *A.F.F.*, 99 D.P.R. 427 (1970); *Burgos Quiñones* v. *A.F.F*, 90 D.P.R. 613 (1964).

En vista de lo expuesto, resulta académica la impugnación de la cuantía objeto del recurso R-69-283. *Debe revocarse la sentencia del tribunal de instancia fechada 26 de agosto de 1969 y en su lugar dictarse una declarándose sin lugar las demandas, con imposición a los demandantes de las costas del proceso.*

El Juez Asociado, Señor Irizarry Yunqué concurre en el resultado.