# 2006 DTA 16

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGIÓN JUDICIAL DE BAYAMÓN**
**PANEL VIII**

LUIS ENRIQUE GÓMEZ PABÓN, GUILLERMINA PABÓN BATISTA
Demandantes-Apelados

v.

YARIXA S. DEL VALLE GUTIERREZ
Demandada-Apelante

Núm. KLAN-2005-00542

San Juan, Puerto Rico, a 17 de noviembre de 2005

Panel integrado por su Presidente, el Juez Arbona Lago,
el Juez Miranda De Hostos y la Juez Pabón Charneco

Arbona Lago, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La Sra. Yarixa S. Del Valle Gutiérrez solicita que revoquemos la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI), el 4 de abril de 2005 y archivada copia de su notificación el 7 de abril de 2005, en la que se concedió al Sr. Luis Enrique Gómez Pabón la custodia de sus tres hijas y determinó que la patria potestad sería compartida entre él y la apelante, madre de las niñas.

**Hechos**

Los aquí litigantes, el Sr. Luis E. Gómez Pabón y la Sra. Yarixa S. Del Valle Gutiérrez, sostuvieron una relación consensual durante aproximadamente cinco años. Como producto de dicha relación procrearon, por medio de inseminación artificial, las trillizas Alina de Lourdes, Karina Naylu y Yariliana, quienes actualmente cuentan con dos años de edad. Además, la Sra. Del Valle tiene una hija de nombre Yarisha Hernández Del Valle quien actualmente cuenta con 8 años de edad, producto de una relación anterior.

Las trillizas permanecieron en el hospital sometidas a un proceso de incubación desde su nacimiento el 2 de octubre de 2002, hasta el 2 de diciembre del mismo año. Para dicha fecha, las partes se separaron dado el hecho de que la Sra. Del Valle no regresó al hogar de la pareja. El Sr. Gómez Pabón se hizo cargo de la custodia de las menores.

El 16 de diciembre de 2002, el Departamento de la Familia presentó ante el Tribunal de Primera Instancia, Sala de Vega Baja, una Petición de Emergencia al amparo de la Ley Núm. 342 de 16 de diciembre de 1999, contra la Sra. Del Valle. En la misma se alegó que tanto las trillizas como la hija mayor de la Sra. Del Valle se encontraban en peligro porque la madre hacía uso de medicamentos sin prescripción, mezclados con alcohol; que presentaba inhabilidad para asumir los cuidados adecuados para las menores y que no era consistente en la información que ofrecía. El 2 de enero de 2003, el foro de instancia concedió la custodia de las menores a la madre.

Así las cosas, el 13 de junio de 2003, el padre de las trillizas y la abuela paterna, Sra. Guillermina Pabón Batista, presentaron demanda (DCU2003-0100) contra la Sra. Del Valle, para obtener la custodia de las menores. ██ Alegaron que desde que las menores nacieron, su madre (Sra. Del Valle) las abandonó a pesar que estuvieron hospitalizadas dos meses, que no lleva a las niñas a las citas médicas y que no las alimenta adecuadamente, lo que milita en detrimento de las menores y ocasiona preocupación por el bienestar de las trillizas. Solicitaron que se les otorgara la custodia y patria potestad exclusiva sobre las tres menores.

La Sra. Del Valle contestó y negó las imputaciones. Aclaró que dejó a las niñas a cargo de la hermana del padre mientras ella realizaba unas gestiones de mudanza y que durante ese período se presentó la querella por el Departamento de la Familia y el Departamento retuvo la custodia de las niñas. ██ Además, la demandada presentó reconvención y solicitó que se fijara una pensión alimentaria a favor de las niñas y se establecieran las relaciones paterno-filiales.

El 10 de septiembre de 2003, el TPI ordenó a la Oficina de Relaciones de Familia del tribunal proceder a coordinar un estudio social privado, a ser pagado en su totalidad por el demandante. Además, autorizó a realizar las evaluaciones psicológicas y/o neurológicas que fueran necesarias.

El demandante solicitaró la reconsideración de dicha orden y adujo que ya había coordinado con el Grupo de Rita Córdova, C.S.P. y el Instituto de Terapia Familiar para que llevaran a cabo el estudio social ordenado. Solicitó, entonces, que el foro de instancia informara de ello a la Oficina de Relaciones de Familia. Así lo notificó el TPI y luego de la orientación adecuada a las partes sobre los peritos privados escogidos, la Oficina de Relaciones de Familia cerró el caso hasta que el tribunal emitiera orden en contrario.

El 30 de enero de 2004, el Sr. González solicitó orden para que el Instituto de Terapia Familiar tuviera acceso al hogar de la Sra. Del Valle, al del Sr. Gómez, a los hospitales, médicos y registros que pudieran tener información de las menores. A esos efectos, el foro de instancia autorizó al Instituto de Terapia Familiar de Rita Córdova, Trabajadores Sociales, C.S.P. tener acceso al hogar de cada uno de los padres de las menores, así como a instituciones escolares, hospitales, médicos, al expediente del tribunal y al expediente del Departamento de la Familia. También ordenó al Instituto a entrevistar familiares colaterales, tales como la hija mayor de la

demandada y efectuar cualquier otra actividad necesaria para la preparación del informe.

La parte demandada se opuso a la selección del perito escogido por el padre demandante y solicitó al tribunal que se notificara una lista de los peritos autorizados por dicho tribunal. El 24 de noviembre de 2005, el tribunal emitió una resolución en la que determinó lo siguiente: *"Las partes, de mutuo acuerdo, deben seleccionar el perito. No ha lugar a la perito sugerida por una de las partes"*. Escrito de Apelación, Apéndice pág. 27. El Sr. Gómez solicitó la reconsideración de dicha orden. No surge del expediente la determinación final del foro de instancia en cuanto a este asunto, por lo que inferimos que la perito finalmente escogida fue la Sra. Carmen Bruselas Vázquez, Lic. 2542, del Instituto de Terapia Familiar, dado el caso que la Sra. Bruselas terminó el estudio y las recomendaciones de su informe fueron acogidas por el foro de instancia.

El 5 de agosto de 2004, la trabajadora social, Sra. Carmen Bruselas, presentó su Estudio Social Pericial para Propósitos de Custodia y Patria Potestad. En el mismo, luego de un estudio exhaustivo de las partes y su entorno, recomendó que se otorgara la custodia y patria potestad de las trillizas al padre y se establecieran visitas materno-filiales. Recomendó, además, que la madre fuera sometida a tratamiento psicológico.

El 26 de agosto de 2004, se celebró la primera parte de la vista en su fondo del caso de epígrafe. Se presentó el testimonio de la trabajadora social Sra. Carmen R. Bruselas sobre el contenido del informe pericial y se le concedieron 15 días para rendir un informe complementario.

En la continuación del juicio en su fondo, el 23 de diciembre de 2004, el tribunal escuchó la segunda parte del testimonio de la Sra. Bruselas e hizo constar que el informe preparado por ésta fue ordenado por el Tribunal. Alegato del Apelado, Apéndice pág. 45.

El 2 de marzo de 2005, tercer y último día del juicio en su fondo, el tribunal tuvo ante sí los testimonios de la Sra. Guillermina Pabón Batista, Evelyn Rivera Clemente, Amarilys Rodríguez y otras trabajadoras sociales.

Así las cosas, el 4 de abril de 2005, el Tribunal emitió sentencia y concedió al padre demandante, Sr. Gómez, la custodia de sus hijas Alina de Lourdes, Karina Naylu y Yariliana, todas de apellidos Gómez Del Valle. La patria potestad quedó compartida entre el padre y la madre. El tribunal estableció, además, las relaciones materno-filiales, a saber: la compañía de las trillizas durante los fines de semanas alternos, desde viernes a la 5:00pm hasta domingo a la 1:00pm.

Inconforme con dicha determinación, la Sra. Del Valle apela ante nos e imputa al foro de instancia los siguientes señalamientos:

*"A. Erró el Honorable Tribunal de Primera Instancia al no cumplir su determinación con lo establecido en la jurisprudencia y el Código Civil al otorgar la custodia de tres niñas de apenas dos años de edad al padre, quien fue veterano de la guerra de Viet[n]am con diagnósticos de esquizofrenia y que conforme al testimonio del propio señor Luis Gómez no está tomando medicamento alguno, el cual ha sido incapacitado en un 100% por la Administración de Veterano y Seguro Social por su diagnóstico de esquizofrenia. Quien, además, ha sido convicto en el Tribunal Federal para el distrito de Puerto Rico por el delito de conspiración para importar cocaína y marihuana a territorio de los Estados Unidos. Quien, además, ha sido agresor de la demandada apelante.*

*B. Erró el Honorable Tribunal de Instancia al no cumplir su determinación con lo relativo a la Patria Potestad que contempla nuestro Código Civil.*

*C. Erró el Honorable Tribunal de Instancia al utilizar el elemento económico como el único a tomarse en cuenta en un caso de custodia.*

*D. Erró el Honorable Tribunal de Instancia en su determinación al Tribunal descansar en hechos que se remontan a hace dos años y que los mismos fueron evaluados y adjudicados bajo un caso que fuera sometido por el Departamento de la Familia por el alegado maltrato en contra de la señora Yarixa Del Valle Gutiérrez y en cuyo caso se determinó que no hubo tal maltrato y se devolvió la custodia a la Sra. Del Valle lo que constituye cosa juzgada en su modalidad de impedimento colateral por sentencia, que fue levantado como defensa afirmativa en la contestación de la demanda.*

*E. Erró el Honorable el Honorable Tribunal de Instancia al incurrir en error de derecho una vez desfilada la prueba del demandante, declarar no ha lugar en ese momento la solicitud que hiciera la parte demandada de otorgar la custodia a la demandada, ya que no se había demostrado prueba suficiente en contra de ésta y requerir el tribunal escuchar prueba adicional cuando la prueba a ser ofrecida era la de la parte demandada y [é]sta favoreció a la misma demandada.*

*F. Erró el Honorable Tribunal de Primera Instancia al determinar que "La demandada ha sido diagnosticada con un padecimiento de depresión mayor en estado de latencia y trastorno de personalidad tipo pasiva-dependiente, reflejando ansiedad y rebeldía social en contra de lo establecido. En adición, le ha sido recomendado un proceso de psicoterapia a lo que nunca se ha querido someter.["] Dicha prueba fue objetada oportunamente y por el fundamento correcto a los efectos que no había prueba pericial admisible que apoyara dicha conclusión.*

*G. Erró el Honorable Tribunal De Primera Instancia al determinar el hecho que "La codemandante, abuela paterna de las menores, constituye un recurso para el cuido, atención y bienestar de las menores compartiendo con el demandante la responsabilidad de crianza y educación de las niñas." Cuando en realidad su petición de custodia fue desestimada por el TPI.*

*H. Erró el Honorable Tribunal de Instancia al descansar sus determinaciones en un informe escrito que no fue admitido en evidencia."*

El demandante-apelado presentó su alegato y solicitó la conformación de la sentencia. Contamos con la transcripción de la prueba testifical ante el TPI e informes periciales. La causa quedó sometida y debemos resolver.

**Exposición y Análisis**

Por estar estrechamente relacionados, discutiremos conjuntamente los señalamientos A, B y C.

Repetidamente se ha señalado que en nuestra jurisdicción los asuntos relacionados con custodia y alimentos de menores están revestidos del más alto interés público, que no puede ser otro que lograr el bienestar del menor. *Ríos Rosario v. Vidal Ramos*, 134 DPR 3 (1993); *In re: Negrón Rivera*, 120 DPR 61, 71-72 (1987); *Rodríguez Avilés v. Rodríguez Beruff*, 117 DPR 616, 626-27 (1986). Es norma reiterada en esta jurisdicción que en las determinaciones sobre custodia los intereses particulares de los progenitores, aunque importantes, no pueden superar los mejores intereses y el bienestar del menor. *Maldonado v. Burris*, Op. de 8 de mayo de 2001, 154 DPR ___ (2001); **2001 J.T.S. 72**; *Sánchez Cruz v. Torres Figueroa*, 123 DPR 418 (1989); *Nudelman v. Ferrer Bolívar*, 107 DPR 495 (1978); *Centeno Alicea v. Ortiz*, 105 DPR 523 (1977); *Marrero Reyes v. García Ramírez*, 105 DPR 90 (1976).

La jurisprudencia desarrollada por el Tribunal Supremo fue incorporada al Código Civil de Puerto Rico. El actual Artículo 107 de dicho Código, 31 LPRA 383, dispone, en lo pertinente, lo siguiente:

*"En todos los casos de divorcio, los hijos menores serán puestos bajo el cuidado y la patria potestad del*

*cónyuge que el Tribunal, en el ejercicio de su sana discreción, considere que los mejores intereses y bienestar del menor quedarán mejor servidos; pero el otro cónyuge tendrá derecho a continuar las relaciones de familia con sus hijos, en la manera y extensión que acuerde el Tribunal al dictar sentencia de divorcio, según los casos."*

Por consiguiente, los tribunales deben prestar particular atención, entre otros criterios, a la preferencia del menor, su sexo, edad, salud mental y física; el cariño que puede brindarle cada parte en controversia; la habilidad de las partes para satisfacer debidamente las necesidades afectivas, morales y económicas del menor; el grado de ajuste del menor al hogar, la escuela y la comunidad en que vive; la interrelación del menor con las partes, sus hermanos y otros miembros de la familia; y la salud psíquica de todas las partes. *Sánchez Cruz v. Torres Figueroa, supra*; *Nudelman v. Ferrer Bolívar, supra*; *Marrero Reyes v. García Ramírez, supra*. Cada situación debe evaluarse cuidadosamente, atendiendo las circunstancias particulares de cada caso. En tal importante misión *"[n]ingún factor es de por sí decisivo. Hay que sopesarlos todos para juzgar de que lado se inclina la balanza y al menos aproximarse al logro de la solución más justa en un asunto de tan extrema dificultad." Maldonado v. Burris, supra*.

En el caso de epígrafe, luego de recibir prueba documental y testifical, el foro de instancia concluyó que el mejor bienestar de las menores se lograba concediendo la custodia de las niñas al padre. La apelante aduce, en los señalamientos A, B y C, que al así resolver, el tribunal erró porque alegadamente el padre es veterano con diagnóstico de esquizofrenia, ex convicto y agresor de la apelante.

Como hemos señalado y abundaremos adelante en la atención de otros señalamientos, gran parte controlante de la prueba practicada ante el TPI consiste en testimonios periciales de especialistas en conducta y sus estudios de campo. Relativamente, poco de la prueba importante para resolver consistió de testimonios no periciales.

Es norma establecida que en ausencia de palpable equivocación, pasión, prejuicio, parcialidad o error manifiesto, los tribunales apelativos no intervendrán con las determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de credibilidad realizadas por los tribunales de instancia. *Argüello López v. Argüello García*, Op. de 31 de agosto de 2001, 154 DPR ____, **2001 J.T.S. 127**; *Trinidad García v. Chade*, Op. 18 de enero de 2001, 154 DPR ____, **2001 J.T.S. 10**; *Rolón García v. Charlie Car Rental, Inc.*, 148 DPR 420 (1999). La determinación de credibilidad del tribunal sentenciador es merecedora de gran deferencia por parte del tribunal apelativo, por cuanto es ese juzgador quien de ordinario está en mejor posición para aquilatar la prueba testifical desfilada, ya que él fue quien oyó y vio declarar a los testigos. *Pueblo v. Bonilla Romero*, 120 DPR 92 (1987). Cuando la evidencia consiste en prueba documental, este Tribunal está en igual condición que el tribunal sentenciador para hacer sus propias determinaciones. *Ortiz et als. v. S.L.G.*, 156 DPR ___, Op. 4 de abril de 2002, 156 DPR ____, **2002 J.T.S. 47**; *Moreda v. Rosselli*, 150 DPR 473 (2000).

Por otro lado y como se sabe, los tribunales apelativos estamos en la misma posición que el TPI cuando se trata de evaluar la prueba documental como la pericial. *Riley v. Rodríguez,* 119 DPR 762 (1987); *Sanabria v. Sucn. González*, 82 DPR 885 (1961).

Como hemos señalado, correspondía al TPI dirimir el conflicto en la prueba y no encontramos aquí fundamento en los planteamientos de la apelante que nos permita intervenir con la apreciación de la prueba que efectuó el foro sentenciador con relación a la totalidad de la evidencia presentada.

Es norma en esta jurisdicción que corresponde al TPI acoger o descartar el testimonio pericial en función de su: (i) solidez, (ii) cualificaciones del perito, (iii) grado de parcialidad que demuestre, si alguna, y (iiii) confiabilidad del método o técnica científica usada. *Dye-Tex P.R., Inc. v. Royal Ins. Co. P.R.*, 150 DPR 658, 664 (2000).

En su señalamiento *"D"*, la apelante sostiene que erró el foro de instancia al tomar en consideración, para su determinación, los hechos de la querella de maltrato materno-filial presentada por el Departamento de la Familia al amparo de la Ley Núm. 342 de 16 de diciembre de 2001, 8 LPRA 441, *et seq.* ■

La Ley para el Amparo a Menores en el Siglo XXI tiene como propósito proteger del maltrato a los menores de dieciocho (18) años de edad, de manera que éstos puedan vivir en un ambiente seguro y saludable que promueva su desarrollo social, emocional, intelectual y físico. Por ello, dicha ley provee para que se prive al padre, madre o persona encargada del bienestar del menor de la custodia y/o de la patria potestad de éstos, cuando el bienestar o la seguridad de los menores está en peligro. Ley Núm. 342, *supra.*

A tales efectos, se estableció un procedimiento judicial para la protección de los menores en casos de maltrato. El Art. 37, 8 LPRA 443b, dispone que la competencia de todas las situaciones de maltrato que necesiten la intervención del tribunal, corresponderá al Tribunal de Primera Instancia, Sala Superior, Asuntos de Familias. Sin embargo, también se estableció un procedimiento especial de emergencia en el Artículo 35 de la referida ley, con el propósito de obtener un remedio expedito, para circunstancias que por su naturaleza apremiante no permiten aguardar por el procedimiento ordinario de privación de custodia, y que ameritan una intervención inmediata del Estado, para asegurar la protección del menor. Es un procedimiento rápido y sencillo, en ocasiones *ex parte*, que podrá ventilarse ante cualquier Juez del Tribunal de Primera Instancia, y el cual de ordinario se origina ante un Juez Municipal.

Del texto de dicho Artículo se desprende que las decisiones que toma el juez en tales procedimientos de emergencia no tienen carácter de finalidad y que, por el contrario, toda decisión de privación de custodia que se tome es una provisional queda siempre sujeta a los procedimientos posteriores, a llevarse a cabo en el Tribunal de Primera Instancia, Sala Superior, Asuntos de Familias. *Dpto. de la Familia v. Ramos*, Op. de 6 de marzo de 2003, 158 DPR____, **2003 J.T.S. 38**. Tal precepto es cónsono con la Ley Núm. 149 de 23 de julio de 1974, 32 LPRA § 2871, según enmendada, conocida como la *"Ley de Controversias y Estados Provisionales de Derecho"*, donde se establece un proceso rápido y económico para la adjudicación provisional de controversias por Jueces Municipales. Esta determinación provisional tampoco constituye cosa juzgada ni impide la tramitación del caso bajo los trámites ordinarios de ley. Ley Núm. 149, *supra*; *Dpto. de la Familia v. Ramos*, *supra.* Ambas legislaciones son análogas porque establecen procedimientos especiales para situaciones de emergencia o en que se deba tomar pronta acción, aunque la Ley Núm. 342, *supra*, resulta ser más específica por referirse al maltrato de menores concretamente. *Dpto. de la Familia v. Ramos, supra.*

En el caso de autos, la apelante alega que la Petición de Emergencia presentada por el Departamento de la Familia al amparo de la Ley 342, *supra*, (DMM2202-299) constituye cosa juzgada en la causa de epígrafe (DCU2003-0100) y que por lo tanto erró el foro de instancia al tomar en consideración los hechos de dicho procedimiento en su determinación en la causa de epígrafe. Es menester señalar que no encontramos en el cuerpo de la sentencia del hermano foro de instancia indicios que sostengan la posición de la apelante. En la misma sólo se hace referencia a la querella que se presentó por el Departamento de la Familia y lo que se resolvió en dicho procedimiento, a saber: la concesión de la custodia provisional de las tres niñas a la madre y ésta a su vez fue referida a un proceso de evaluación.

Independientemente de lo anterior, como vimos antes, las determinaciones tomadas en los procedimientos de emergencias tramitados al amparo de la Ley Núm. 342, *supra*, no constituyen cosa juzgada ni tienen carácter de finalidad. Por el contrario, son determinaciones de custodia provisionales que no impiden la tramitación ordinaria del caso.

Por lo tanto, no se cometió el error señalado.

En el planteamiento *"E"*, la apelante arguye que erró el tribunal sentenciador al no otorgarle la custodia de

las menores, cuando el demandante terminó de presentar su prueba.

Se refiere la apelante a la Regla 39.2 (c) de las de Procedimiento Civil, 32 LPRA Ap. III, R. 39.2 (c), que dispone lo siguiente:

*Después que el demandante haya terminado la presentación de su prueba, el demandado, sin renunciar al derecho de ofrecer prueba en el caso de que la moción sea declarada sin lugar, podrá solicitar la desestimación, fundándose en que bajo los hechos hasta ese momento probados y la ley, el demandante no tiene derecho a la concesión de remedio alguno. El tribunal podrá entonces determinar los hechos y dictar sentencia contra el demandante, o podrá negarse a dictar sentencia hasta que toda la prueba haya sido presentada. (...)*

Esta regla está fundamentada en uno de los principios cardinales de las Reglas de Procedimiento Civil, la economía procesal. Ha sido resuelto que *"[m]uy poco se ganaría con exigir invariablemente la presentación de la prueba de la parte demandada cuando el juez está convencido que el demandante no puede prevalecer."* Sin embargo, en caso de duda, es preferible requerir al demandado que presente su caso. *Irizarry v. A.F.F.*, 93 DPR 416 (1961).

Como vemos, el tribunal tiene discreción para requerir la presentación de prueba por parte del demandado, una vez el demandante haya terminado el desfile de su prueba.

Además, se trata aquí de un error señalado y no discutido apropiadamente. *Quiñones López v. Manzano*, 141 DPR 139, 165 (1996). La apelante se limitó a citar la regla antes transcrita y adujo solamente lo siguiente:

*El testimonio de la trabajadora social señora Bruselas no fue suficiente para que el TPI concediera la custodia provisional al señor Gómez Pabón. Tampoco era suficiente para sobrevivir a moción de desestimación contra la prueba, máxime cuando la prueba de la parte demandada-apelante favoreció a la señora Del Valle. (Énfasis y referencias omitidas)*

Realmente se trata de un error levantado, pero no propiamente discutido, por lo que se entiende renunciado. *Pueblo v. Dieppa Beauchamp*, 115 DPR 248 (1984). A tal respecto se ha reiterado que: *"Es norma claramente establecida, por este Tribunal, que la sola alegación de un error, que luego no se fundamenta o discute, no debe ser motivo para revisar, modificar o de alguna manera cambiar una decisión de un tribunal de instancia. JRT v. Hato Rey Psychiatric Hosp., 119 DPR 62 (1987); Santos Green v. Cruz, 100 DPR 9 (1971); Pueblo v. Matos Pretto, 93 DPR 113 (1966); Pueblo v. Febres, 78 DPR 893 (1956); De Jesús v. Assad, 63 DPR 137 (1944); Sucn. González v. Federal Land Bank, 51 DPR 469 (1937); Morales v. Cruz Vélez, 34 DPR 834 (1926); Pueblo v. Cruz, 34 DPR 211 (1925)."* Quiñones López v. Manzano, 141 DPR 139, 165 (1996).

Como vemos, la apelante no nos pone en posición de resolver su planteamiento; se limita a una alocución general sin hacer alusión específica a la prueba a que se refiere. Por lo tanto, no se cometió el error señalado.

Por otro lado, en el señalamiento de error *"F"* sostiene la apelante que erró el tribunal de instancia al determinar que la Sra. Del Valle había sido diagnosticada con depresión mayor, trastorno de personalidad tipo pasiva dependiente y que le fue recomendado un proceso de psicoterapia, a pesar de haber sido objetada oportunamente, por entender que no había prueba pericial que la fundamentara.

A tal respecto, del testimonio de la Sra. Carmen Bruselas, Trabajadora Social Clínica, consta lo siguiente:

*"[...]*

*El doctor Rodríguez tiene hallazgos en su evaluación, tales como que hay problemas de comportamiento de*

*violencia doméstica donde la señora es agresora en su primera relación y víctima en su segunda relación. Que hay evidencia de uso de sustancias y alcohol, para las cuales no ha recibido tratamiento. Y que la trabajadora social que estaba a cargo del caso en ese momento, le había indicado, inclusive, al sicólogo, que el ajuste de la señora al plan, plan de servicio, se refiere, era deficiente y que no se recomendaba la custodia; esto en aquel momento con relación a la 342.*

*POR EL HON. JUEZ:*

*P    Cuando se hablaba de uso de sustancias, ¿se hablaba de sustancias controladas?*

*TESTIGO (SRA. BRUSELAS):*

*R    De sustancias controladas.*

*P    ¿Se especificó cuáles de ellas en particular, si alguna?*

*R    Exactamente tomado del informe dice: "Existe evidencia de uso de sustancias y alcohol, por los cuales no ha recibido tratamiento". Hay un colateral posterior que habla nuevamente de esto.*

*LCDO. LOPEZ:*

*Su Señoría.*

*HON. JUEZ:*

*Continúe.*

*LCDO. LOPEZ:*

*Eso es por parte de la acción 342 y ya fue adjudicado.*

*HON. JUEZ:*

*En su momento, entonces, el Tribunal lo tomará en consideración cuando se traiga a colación.*

*TESTIGO (SRA. BRUSELAS):*

*El doctor hace un diagnóstico de depresión mayor. Tendría que ir, para ser fiel, referirme directamente a lo que dice, no, que tiene un... [...]* Ap. págs. 32-34. Vista del 23 de diciembre de 2004.

*[...]*

*Bueno, en términos generales, es una adulta que funciona a nivel intelectual promedio, que sus actos esenciales consisten en una adulta creativa, analítica, inteligente, que refleja buena capacidad de análisis, de síntesis, de comprensión, uso adecuado del sentido común aplicado a examen sicológico, reconocimiento de elementos esenciales de los no esenciales, buena memoria y buen funcionamiento sensorial perceptual de manera corta y larga.*

*Se recomendó sicoterapia. Es la recomendación final de este plan. Descartar el uso de alcohol y drogas. Y la evaluación en seis meses, cosa que entendiendo que estoy viendo el caso, no se dio.*

*Que nos pareciera significativo también, conducta marcada de búsqueda de atención, posiblemente en forma negativa desde mal manejo de su coraje, agresividad, falta de motivación, estados emocionales impulsivos, depresivos, dándose por vencida fácilmente. [...] Ap. págs. 35-36. Vista del 23 de diciembre de 2004.*

*[...]*

R *"Conducta pasiva dependiente, que proyecta depresión mayor en estado de latencia, trastorno de personalidad tipo pasiva-dependiente, sus necesidades afectivas no fueron llenadas, refleja ansiedad, frustración, y rebeldía social en contra de lo establecido. Se proyecta motivada la autosuperación y a la recuperación de sus hijas". [...] Ap. pág. 37. Vista del 23 de diciembre de 2004.*

*[...]*

*Mi recomendación final, luego del análisis es que la custodia de las niñas le fuera cedida al padre. ¿Cuál es mi base? Pues, entiendo que por los hallazgos, la dinámica en las entrevistas, lo que pudimos ver, el padre mostraba una estabilidad, más madurez y estabilidad emocional, mayor interés, e inclusive control en la dinámica con las niñas, que el que pudimos percibir con la madre. [...] Ap. pág. 41. Vista del 23 de diciembre de 2004.*

*[...]*

P *Usted dice que entrevistó directamente a la señora Yaritza Del Valle.*

*TESTIGO (SRA. BRUSELAS):*

R *Eso es así.*

P *¿Pudo ver la forma y manera en que se desenvuelve dentro de su pueblo o su ciudad o su vecindario?*

R *En entrevista directa puedo hablar de la forma en que se desenvuelve como persona directamente conmigo y en su ámbito familiar...*

P *¿Cómo se desenvolvió con usted?*

R *Bueno, si podemos hacer la narración exacta de cómo fue la situación. Llegamos a visitar a la señora en esta primera ocasión para hacer el contacto. Quizás esto pueda abonar sobre la recomendación final que estamos haciendo. Nos recibe su madre, nos recibe su abuela, están las niñas en su lugar, en el área que le tiene. Yo me encuentro observando el área, y en eso, si físicamente puedo explicar, hay... es la sala, está cerrada con un portoncito así, están las nenas, está la cocina, están cocinando las señoras, yo estoy aquí y la señora viene saliendo del baño, prácticamente desnuda, y me habla. O sea, que tengo que mirar cuando escucho la voz y me encuentro esto, para nosotros fue sorpresivo, verdad, porque estamos... somos la persona que va a evaluar y generalmente...*

*LCDO. LOPEZ:*

*Su Señoría, vamos a objetar. Primero, que eso no lo dice el informe de ella.*

*LCDO. QUIÑONES:*

*Pero eso fue la investigación.*

*LCDO. LOPEZ:*

*Son cosas que dice que evalúa en el informe, su Señoría, y ni siquiera lo dijo en la primera ocasión que testificó aquí ante usted.*

*LCDO. QUIÑONES:*

*Eso aparece aquí, Su Señoría. ¿En qué página es que está?*

*POR EL HON. JUEZ:*

P   *Vamos al informe. ¿Está en el informe?*

*TESTIGO (SRA. BRUSELAS):*

R   *Si me permite.*

P   *Okay. Adelante.*

R   *En el informe dice...*

P   *¿Página? Para que el compañero pueda seguirla.*

R   *Disculpe usted, la página 11.*

P   *Página 11.*

R   *En observaciones y recomendaciones. ¿Puedo citar?*

P   *Como no. Adelante*

R   *"Varios ámbitos han sido evaluados, pero lo que aparenta ser una constante es la actitud madura del padre de las nenas y los controles que exhibe. Esto en contraposición con una actitud inmadura y de riesgo de la madre. En evaluación sicológica a ésta se le recomendó sicoterapia, - haciendo alusión al doctor Rodríguez- proceso al que no se ha sometido nunca. Los rasgos de impulsividad parecen continuar presentes. No aparenta tener un buen sensor social, por lo cual expresa lo que piensa sin depurarlo. Esto, la mayor parte de las veces, con palabras soeces. En el contacto visual, la cliente se mostró inapropiada al mostrar su cuerpo sin reparos y luego con vestimenta inapropiada para la situación." [...] Ap. págs. 45-48. Vista del 23 de diciembre de 2004.*

*[...]*

P   *Sobre la atención o el bienestar de las niñas, cuando están con Yaritza Del Valle, ¿cómo fue?*

R   *En las oportunidades que tuvimos de verla, generalmente las nenas están dentro de la casa. En las tres ocasiones que la logramos ver en su casa y en casa de su mamá, descalzas, en panticitos, sin camisitas. Las vimos arrancar pasto, las vimos comer hojas. En un área abierta, pero cuidada. Y por varias personas a su atención, porque generalmente doña Yaritza tiene... estuvo presente su mamá o su abuela, ella; la nena mayor.*

P   *Cuando estaban las niñas con don Luis, ¿cómo usted lo percibió?*

R   *La organización de la casa es un tanto diferente. En el área... doña Yaritza ha tenido que preparar en*

*su casa el área de la sala, cerrarla y dejar todo el espacio para las niñas, es el área que tiene para que puedan pasar el día o el tiempo. Don Luis tiene un hogar tipo "chalet", por lo tanto, la parte arriba la tiene cerrada completamente y está totalmente preparada para las niñas de un lado a otro, o sea, con alfombritas de goma, con letras, lavamanos arriba para cada vez que se cae el bobo o algo así. Todas las veces que fuimos, doña Guillermina estuvo. Tenemos que decir que fuimos más veces a cada (sic.) de don Luis, precisamente porque siempre hay la impresión de que las madres tienen la destreza de cuidar niños los padres no, así es que entramos en diferentes ocasiones sin avisar, precisamente para constatar el cuido. Y éste fue constante, o sea, constantemente siempre, aunque llegáramos allí de improviso, las niñas se encontraban siempre arregladitas, vestiditas, en algún tiempo tipo de actividad o descansando.*

*Y en ellas se percibe más tranquilas, más controlables, o sea, con papá, papá las maneja, "dame esto, dame aquello".*

*Con mamá, pues la personalidad obviamente es diferente, así es que el intercambio es diferente al momento de hablarles. [...]"* Ap. págs. 54-55. Vista del 23 de diciembre de 2004.

Además, en el Estudio Social Pericial preparado por la trabajadora social, Sra. Carmen Bruselas, se recoge el diagnóstico ofrecido por el Dr. Neftalí Rodríguez, psicólogo que evaluó por un tiempo a la Sra. Del Valle. Entre otras cosas y como hemos visto, el informe cita dicho diagnóstico y establece que la apelante *"proyecta depresión mayor en estado de latencia. Trastorno de personalidad, tipo pasiva-dependiente. Sus necesidades afectivas no fueron llenadas. Refleja ansiedad, frustración y rebeldía social en contra de lo establecido."* Alegato del Apelado, Apéndice K.

Como vimos, la regla general le concede gran deferencia a la apreciación de la prueba hecha por Instancia, *Sánchez Rodríguez v. López Jiménez*, 116 DPR 172 (1985); *García v. A.F.F.*, 103 DPR 356, 357-358 (1975), ya que en apelación sólo contamos con récords poco expresivos. *Pérez Cruz v. Hosp. La Concepción*, 115 DPR 721 (1984). El *"testimonio debe ser oído, y visto, interrogado y mirado"*. *Hawayek v. A.F.F.*, 123 DPR 526, 531 (1989).

Como ya señalamos, en ausencia de palpable equivocación, pasión, prejuicio, parcialidad o error manifiesto, los tribunales apelativos no intervendrán con las determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de credibilidad realizadas por los tribunales de instancia. *Argüello López v. Argüello García, supra; Trinidad García v. Chade, supra, Rolón García v. Charlie Car Rental, Inc., supra.*

Los fundamentos de las partes no nos han puesto en posición de intervenir con la apreciación de la prueba que a este respecto efectuó el foro sentenciador. No se cometió el error señalado.

La apelante, en su planteamiento *"G"*, arguye que erró el TPI al contar con la abuela paterna como un recurso de cuido, atención y bienestar de las menores, compartiendo con el demandante la responsabilidad de crianza y educación de las niñas, a pesar que su petición de custodia fue desestimada por el TPI durante el proceso del caso.

Se trata de otro error planteado y no discutido apropiadamente. Por lo que el mismo se entiende renunciado. *Pueblo v. Dieppa Beauchamp*, 115 DPR 248 (1984). No obstante, es preciso señalar que estamos ante un planteamiento inmeritorio. Por el hecho que el TPI excluyera de la petición de custodia el reclamo de la abuela paterna a nombre propio, no se puede colegir y tampoco ello implica que en esta causa no se pueda tomar en consideración a la Sra. Guillermina Pabón (abuela paterna) como un **recurso de apoyo** al momento de otorgarle la custodia al padre de las menores, más aún cuando la Sra. Pabón y el Sr. Gómez conviven en el mismo hogar. La custodia de las menores no fue otorgada a la abuela paterna, el foro sentenciador sólo la tomó en consideración como factor de apoyo para otorgarle la custodia de las niñas al padre. Para ello no era necesario

que la Sra. Pabón figurara como parte demandante en el pleito. No se cometió el error señalado.

En el error *"H"*, la apelante sostiene que erró el foro sentenciador al tomar en consideración las determinaciones de un informe escrito que no fue admitido en evidencia. Se refiere la Sra. Del Valle, en esta ocasión, al informe preparado por la trabajadora social, autorizada por el tribunal, Sra. Carmen Bruselas. Aduce la Sra. Del Valle que dicho informe no es confiable y no fue apoyado por la prueba desfilada.

Se trata aquí de un planteamiento totalmente espurio. El informe de referencia fue precisamente ordenado por el TPI para auxiliar a dicho foro a tomar una determinación sobre el asunto en controversia, la custodia y patria potestad de las menores.

No se presentan fundamentos que prueben la alegación de la apelante en cuanto a que el informe de la trabajadora social no es confiable. No se imputa tampoco que la Sra. Carmen Bruselas no sea persona competente y con capacidad suficiente para efectuar el estudio encomendado y ofrecer su opinión al foro de instancia, opinión con la que el foro sentenciador concurrió aunque no estaba obligado a ello. *Pueblo v. Montes Vega*, 118 DPR 164 (1986).

Tampoco se cometió el error señalado.

Entendemos meritorio señalar que la mayoría de los errores presentados por la parte apelante, Sra. Del Valle, han sido discutidos en forma somera y recurriendo mucho a citas legales y jurisprudenciales que arrojan poca luz al planteamiento dentro del contexto de los hechos que informa esta causa.

## Dictamen

Por los fundamentos que anteceden, se confirma en su totalidad la sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones