Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| CARMEN DOLORES SURO RODRÍGUEZ; MIGUEL ÁNGEL RIVERA RODRÍGUEZ; LUIS DANIEL RIVERA RODRÍGUEZ<br><br>*Apelantes*<br><br>v.<br><br>QUALITY HEALTH SERVICES OF PUERTO RICO, INC. O EN LA ALTERNATIVA CORPORACIÓN DESCONOCIDA "A" H/N/C HOSPITAL SAN CRISTÓBAL; FUNDACIÓN SAN CRISTÓBAL, INC. O EN LA ALTERNATIVA CORPORACIÓN DESCONOCIDA "B" H/N/C HOSPITAL SAN CRISTÓBAL; HOSPITAL SAN CRISTÓBAL, INC. O EN LA ALTERNATIVA CORPORACIÓN DESCONOCIDA "C" H/N/C HOSPITAL SAN CRISTÓBAL; DRA. IRIS V. VÉLEZ GARCÍA, SU ESPOSO JOHN ROE, AMBOS POR SÍ Y EN REPRESENTACIÓN DE SU SOCIEDAD LEGAL DE BIENES GANANCIALES; DR. ZACARÍAS A. MATEO MINAYA, SU ESPOSA BERRIS CASTILLO, AMBOS POR SÍ Y EN REPRESENTACIÓN DE SU SOCIEDAD LEGAL DE GANANCIALES; DR. JOHN DOE SU ESPOSA JANE DOE, AMBOS POR SÍ Y EN REPRESENTACIÓN DE SU SOCIEDAD LEGAL DE BIENES GANANCIALES; JUAN DEL PUEBLO 1,2,3, POR SÍ Y EN REPRESENTACIÓN DE SUS RESPECTIVAS SOCIEDADES LEGALES DE BIENES GANANCIALES; COMPAÑÍAS ASEGURADORAS A, B, C Y D<br><br>*Apelados* | KLAN202400724 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm.: PO2019CV00026<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de enero de 2025.

Número Identificador

SEN2025_____

Comparecen ante nos, Carmen Dolores Suro Rodríguez (señora Suro), Miguel Ángel Rivera Rodríguez (señor Miguel Rodríguez) y Luis Daniel Rivera Rodríguez (señor Luis Rivera) (en conjunto, la parte apelante), mediante recurso de *Apelación* presentado el 29 de julio de 2024, y nos solicitan que revoquemos la *Sentencia* emitida el 27 de junio de 2024, notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI o foro primario). En dicha *Sentencia*, el TPI declaró *Ha Lugar* la *Moción Solicitando Sentencia Sumaria* presentada el 1 de abril de 2024 por Quality Health Services of Puerto Rico, Inc. (Quality), y la *Moción Solicitando se Dicte Sentencia Sumaria de Acuerdo a la Regla 36 de Procedimiento Civil* presentada el 7 de abril de 2024 por la Dra. Iris V. Vélez García (Dra. Vélez) y el Dr. Zacarías A. Mateo Minaya (Dr. Mateo) (en conjunto, parte apelada), y desestimó con perjuicio todas las causas de acción por impericia médica presentadas por la parte apelante.

Por los fundamentos que expresamos a continuación, **revocamos** la Sentencia recurrida.

## I.

Surge del legajo apelativo y del expediente electrónico que, el 8 de enero de 2019, la parte apelante presentó *Demanda*[1] contra Quality, la Dra. Vélez y el Dr. Mateo. En síntesis, adujo que la Sra. Ramona Rodríguez Rivera (señora Ramona Rodríguez o paciente) murió el 19 de mayo de 2016 como consecuencia de la cirugía mal realizada por la Dra. Vélez y el Dr. Mateo. Además, indicó que la parte apelada cometió actos culposos y negligentes sobre la atención médica brindada a la paciente. Alegó que, durante el proceso de la operación y hospitalización, la señora Ramona Rodríguez vivió con dolores profundos físicos y emocionales que sobrellevó hasta su

---

[1] Véase, Entrada #1 de SUMAC.

lecho de muerte. Esbozó que, dichos daños fueron heredados y reclamados por la parte apelante, quienes son hijos de la señora Ramona Rodríguez. A tenor con ello, adujo que la causa próxima de los daños de la parte apelante fue la negligencia individual de la parte apelada. Con la presentación de la *Demanda*, se incluyó el informe pericial del Dr. Jason S. James (Dr. James)[2].

En lo pertinente a la controversia ante nuestra consideración, Quality presentó *Moción Solicitando Sentencia Sumaria*[3], mediante la cual alegó que la señora Suro Rodríguez, el señor Miguel Rodríguez y el señor Luis Rivera, así como, Lourdes Rivera Rodríguez, María de los Ángeles Ramos Rodríguez y Rafael Pacheco Rodríguez, son hijos de la señora Ramona Rodríguez; y que, estos otros hijos, también presentaron demanda en el Tribunal Federal para el Distrito de Puerto Rico en contra de la misma parte apelada, en la que esbozaron las mismas alegaciones y remedios[4], a saber: la responsabilidad por impericia médica; que la causa eficiente del deceso de la señora Ramona Rodríguez fue la negligencia combinada de la parte apelada, y la utilización del mismo perito, Dr. James, así como su informe pericial.

Quality alegó que el juez que presidía el caso en el Tribunal Federal para el Distrito de Puerto Rico emitió *Memorando y Orden* ("Memorandum and Order") en la cual dispuso que procedía la desestimación de la reclamación presentada en ese foro. El magistrado federal razonó que la prueba presentada por los reclamantes era insuficiente para sostener una reclamación de impericia médica en contra de la parte apelada. En específico, entendió que el informe pericial del Dr. James era exiguo de prueba y de elementos que corroboraran las alegaciones. Así pues, los

---

[2] *Íd.*
[3] Entrada #111 de SUMAC.
[4] *Íd.*, pág. 2.

reclamantes del foro federal, insatisfechos con la sentencia desestimatoria, presentaron *Apelación* ante el Tribunal Federal de Apelaciones para el Primer Circuito de Boston y dicho foro emitió *Sentencia* el 19 de enero de 2024, y la cual confirmó al Tribunal Federal de Distrito de Puerto Rico, por lo tanto, desestimó las reclamaciones de los allí reclamantes por carecer de prueba suficiente en derecho para probar *prima facie* sus alegaciones de impericia médica.

Así las cosas, en la *Moción Solicitando Sentencia Sumaria,* Quality solicitó como remedio la desestimación con perjuicio de la *Demanda* presentada en el foro primario. Dicha solicitud se fundamentó en lo resuelto por el tribunal federal y su análisis giraba en torno a la defensa de *Cosa juzgada,* en su modalidad de Impedimento colateral por sentencia y la insuficiencia del informe pericial para establecer una causa de acción *prima facie* por impericia médica. En la referida moción, se enumeraron 25 hechos que entendieron no están en controversia e incluyeron 18 exhibits.

Seguidamente, la Dra. Vélez y el Dr. Mateo presentaron *Moción Solicitando se Dicte Sentencia Sumaria de Acuerdo a la Regla 36 de Procedimiento Civil*[5]. En esta, alegaron que la controversia en el caso de autos estaba relacionada a la suficiencia de la prueba pericial anunciada por la parte apelante, ya que el informe pericial era insuficiente para establecer un caso *prima facie* de impericia médica. Por tanto, solicitaron al foro primario que desestime la *Demanda* incoada a base de la doctrina de Cosa juzgada en la modalidad de impedimento colateral y apoyan su petitorio a tenor con la Opinión del Juez Federal Hon. Pedro Delgado. Surge del expediente que, en la aludida moción, se enumeraron 29 hechos que no están en controversia con sus exhibits.

---

[5] Entrada #113 de SUMAC.

En respuesta, el 28 de mayo de 2023, la parte apelante presentó *Oposición Conjunta a Mociones de Sentencia Sumaria*[6]. En síntesis, alegó que no hay identidad de partes entre los hijos de la señora Ramona Rodríguez, por lo cual, no aplica la defensa incoada por la parte apelada. Además, tampoco debe aplicarse el análisis del juez federal Hon. Pedro Delgado porque la exclusión del Dr. James como perito está basada en la Regla 26 de las Reglas de Procedimiento Civil Federal[7] y la Regla 702 de las Reglas Federales de Evidencia[8], y estas no aplican en el foro estatal. Arguyó que, en el caso de marras, no ha existido un requisito similar al establecido por la Regla 26 Federal, y mucho menos una penalidad por incumplir este requisito inexistente. En cuanto a la Regla 702 de Evidencia Federal, esta y las reglas subsiguientes sí encuentran equivalencia en la Reglas de Evidencia. Sin embrago, no está presente la interacción que las reglas de evidencia federales tienen con la Regla 26, ya que esta última no aplica en nuestra jurisdicción. De igual forma y en oposición, arguyó que solo hay 9 hechos que no están en controversia, sin embargo, no presentó exhibits ni declaración jurada.

El 27 de junio de 2024, el TPI dictó *Sentencia* y realizó las siguientes determinaciones de hecho:

1. Los Demandantes en el caso de epígrafe, Carmen Dolores Suro Rodríguez, Miguel Ángel Rivera Rodríguez, y Luis Daniel Rivera Rodríguez, radicaron su demanda en contra de los demandados comparecientes el 8 de enero del 2019.
2. Los Demandantes son los hijos adultos de la fenecida, Ramona Rodríguez Rivera.
3. En lo que respecta la Dra. Vélez, la demanda alega que "...es una doctora en medicina con especialidad en obstetricia y ginecología que ejerce su profesión en Coto Laurel, en Ponce, Puerto Rico"; y "...atendió a la Sra. Ramona Rodríguez Rivera. ..."
4. En cuanto al Dr. Mateo, la demanda alega que "...es un doctor en medicina con especialidad en obstetricia y ginecología que ejerce su profesión en Coto Laurel, en

---

[6] Entrada #119 de SUMAC.
[7] Fed. R. Civ. P. 1.
[8] Rules of Evidence for Certain Courts and Proceedings, Pub. L. No. 93-595.

Ponce, Puerto Rico"; y "...atendió a la Sra. Ramona Rodríguez Rivera. ..."

5. Conforme las alegaciones de la Demanda, la Sra. Rodríguez Rivera fue paciente de la Dra. Vélez desde el 2013 hasta el 2016.

6. En o alrededor del 21 de marzo de 2016, la Sra. Rodríguez Rivera fue diagnosticada con un neoplasma benigno del ovario no especificado.

7. El 18 de abril de 2016, se programó la cirugía, una ooforectomía, la cual conllevaba la remoción de los ovarios, para el 21 de abril de 2016.

8. El 21 de abril de 2016, la paciente Rodríguez fue ingresada en el Hospital San Cristóbal bajo el servicio de la Dra. Vélez para una laparotomía exploratoria, ooforectomía bilateral y lisis de adherencias.

9. Durante la cirugía, la Dra. Vélez encontró un "pelvis congelado" con múltiples adherencias abdominopélvicas y consultó al Dr. Mateo para que la asistiera con las adherencias.

10. La Sra. Rodríguez estuvo hospitalizada hasta el 25 de abril de 2016, cuando fue dada de alta.

11. El 29 de abril de 2016, la paciente Rodríguez fue sometida a una laparotomía exploratoria, colectomía parcial con bolsa de Hartman, colostomía terminal e histerectomía subtotal.

12. Los hallazgos fueron peritonitis abdomino pélvica aguda, colon sigmoide perforado y útero infectado; y los cirujanos que intervinieron en dicho procedimiento fueron la Dra. Vélez, el Dr. Mateo y el Dr. Ortiz Rosado de cirugía general.

13. La paciente Rodríguez permaneció hospitalizada luego de la cirugía antes descrita, y su condición deterioró.

14. La Sra. Rodríguez falleció el 19 de mayo de 2016.

15. Los Demandantes alegan que la causa eficiente del deceso de su madre fue la negligencia combinada de los demandados Quality Health Services of PR, haciendo negocios como Hospital San Cristóbal, Dra. Vélez y Dr. Mateo.

16. Los demandantes alegan que los demandados, incluyendo la Dra. Vélez y el Dr. Mateo, individual y colectivamente, incurrieron en negligencia lo cual resultó en el deterioro y muerte de la Sra. Rodríguez, y su causa de acción es basada en el informe pericial que se aneja como el Anejo 1 de la Demanda.

17. Los demandantes alegan que el personal de Quality Health Services of PR, haciendo negocios como Hospital San Cristóbal se desvió del estándar de cuidado aceptable en la profesión médica al no brindar un tratamiento adecuado a la paciente y al no mantener una calidad de limpieza en el cuidado de la paciente Ramona Rodríguez Rivera.

18. En cuanto a los demandados Dra. Vélez y Dr. Mateo, los demandantes alegan que estos incumplieron con el estándar de cuidado reconocido por la profesión médica en la cirugía realizada a la paciente Ramona Rodríguez Rivera y en el subsiguiente cuidado post operatorio.

19. A los fines de establecer la alegada negligencia de los comparecientes, los Demandantes contrataron al Dr.

Jason S. James, en adelante "Dr. James", como su perito.

20. El caso de autos tiene un pleito hermano previamente radicado ante el foro federal por otros hijos de la Sra. Rodríguez Rivera, el cual expone las mismas alegaciones y los mismos daños alegados en este.

21. Los demandantes en el caso federal alegaron jurisdicción federal por diversidad de ciudadanía, por ser domiciliados en estados distintos a Puerto Rico. Las alegaciones de responsabilidad presentadas en la demanda ante el Tribunal Federal, son idénticas a las presentadas por los demandantes en el caso del epígrafe ante ese Honorable Tribunal: que la causa eficiente del deceso de su madre fue la negligencia combinada de los demandados Quality Health Services of PR, haciendo negocios como Hospital San Cristóbal, Dra. Iris Vélez y Dr. Zacarías Mateo Minaya, que el personal de Quality Health Services of PR, haciendo negocios como Hospital San Cristóbal se desvió del estándar de cuidado aceptable en la profesión médica al no brindar un tratamiento adecuado a la paciente y al no mantener una calidad de limpieza en el cuidado de la paciente Ramona Rodríguez Rivera y alegaron que los demandados Dra. Iris Vélez y Dr. Zacarías Mateo Minaya incumplieron con el estándar de cuidado reconocido por la profesión médica en la cirugía realizada a la paciente Ramona Rodríguez Rivera y en el subsiguiente cuidado post operatorio.

22. Los demandantes en el caso del epígrafe y en el caso presentado ante el Tribunal Federal para el Distrito de Puerto Rico están representados por los mismos abogados, Bufete de David Efron.

23. Para probar sus alegaciones de desviación del estándar de cuidado en contra de los demandados, los demandantes en ambos casos presentaron el mismo perito Dr. Jason S. James

24. Los demandantes en el caso estatal y federal presentaron el mismo informe pericial del Dr. Jason S. James para probar sus alegaciones de impericia en contra de los demandados Quality Health Services of PR, haciendo negocios como Hospital San Cristóbal, Dra. Iris Vélez y Dr. Zacarías Mateo Minaya.

25. En el caso ante el foro federal, al concluir el descubrimiento de prueba, los demandados Quality Health Services of PR, haciendo negocios como Hospital San Cristóbal, y el Dr. Mateo radicaron una moción en limine solicitando la exclusión del Dr. James, el perito de los Demandantes, y la Dra. Vélez radicó moción uniéndose a dicha solicitud.

26. La parte demandante radicó su oposición a las mociones en limine de los Demandados.

27. El 4 de agosto de 2022, el Juez Pedro Delgado del Tribunal Federal emitió un Memorando y Orden concediendo las mociones in limine de los Demandados y excluyó las opiniones y el testimonio del Dr. James.

28. En su Memorando y Orden, el Juez Delgado hizo las siguientes determinaciones en cuanto al informe y opiniones del Dr. James:

1. En primer lugar, el Dr. James concluye como cuestión de hecho que la Dra. Vélez y el Dr. Mateo perforaron el colon sigmoide de la paciente durante la primera cirugía del 21 de abril de 2016. Pero no hay explicación para esta conclusión.

2. 2. En segundo lugar, el Dr. James concluye que la Dra. Vélez y el Dr. Mateo se apartaron de los estándares de cuidado aceptables. Sin embargo, no indica cuáles son esos estándares aplicables, ni de dónde provienen; y cómo la Dra. Vélez y el Dr. Mateo incumplieron con los mismos. En lo que respecta a este hallazgo, el Juez Delgado determinó que esta conclusión estaba basada en una inferencia de *res ipsa loquitur*, la cual carece de una metodología confiable y admisible.

3. El Dr. James no identificó el estándar de cuidado aplicable a los demandados, y mucho menos explica la base para su conclusión que los demandados violaron ese estándar.

29. El Tribunal Federal determinó que la conclusión del Dr. James sobre la alegada perforación del intestino durante la primera cirugía era inconsistente con el historial clínico que revisó y resumió en su informe el Dr. James.

30. El Tribunal Federal señaló que "…el 25 de abril de 2016, [la señora Rodríguez] estaba tolerando una dieta regular y expulsando gases y materia fecal con normalidad y se consideró que estaba lista para ser dada de alta. Permaneció afebril durante todo el curso postoperatorio. La señora Rodríguez Rivera fue dada de alta a las 3:16 pm del 25 de abril de 2016 sin ninguna instrucción especial."

31. En el contexto del caso federal, los demandados radicaron mociones de sentencia sumaria, las cuales fueron concedidas por el Juez Delgado mediante Memorando y Orden emitida el 28 de septiembre de 2022.

32. Conforme el Memorando y Orden del Juez Delgado, se desestimó el caso de los demandantes ante el foro federal, y la sentencia a esos efectos fue emitida el 28 de septiembre de 2022.

33. Inconforme con el dictamen del Tribunal Federal, los demandantes federales recurrieron ante el Tribunal Federal de Apelaciones del Primer Circuito, alegando que el Juez Delgado erró al excluir al Dr. James; y al conceder las mociones de sentencia sumaria radicadas por los Demandados.

34. Luego de recibir los alegatos, y escuchar los argumentos orales de las partes, el Tribunal Federal de Apelaciones del Primer Circuito confirmo las Opiniones del Juez Delgado sobre la exclusión del Dr. James y la concesión de sentencia sumaría a favor de los demandados.

35. El Tribunal Federal de Apelaciones del Primer Circuito confirmó el dictamen del Tribunal Federal de Distrito ya que estuvo de acuerdo que el informe del Dr. James no

identificó el estándar de cuidado nacional que allegadamente incumplieron los galenos demandados.

36. El Tribunal Federal de Apelaciones del Primer Circuito coincidió que las opiniones del Dr. James solo podían interpretarse como unas basadas en una inferencia *res ipsa loquitur*, lo cual es una inferencia insuficiente para resistir el escrutinio en este entorno. Rivera Rodríguez, 2022 WL 3445348, en *4 (citando López-Ramírez v. Grupo HIMA San Pablo, Inc., Civ. No. 16-3192 (RAM), 2020 WL 365554, en *5 (D.P.R. 22 de enero de 2020).

37. En el contexto de la determinación de la admisibilidad del testimonio y opiniones periciales del Dr. James, el Tribunal Federal de Apelaciones del Primer Circuito determinó que como el mismo consiste únicamente en una inferencia basada en *res ipsa loquitur*, carecería de una metodología confiable y admisible.

38. El Tribunal Federal de Apelaciones emitió su Mandato el 29 de febrero de 2024.

39. Habiendo transcurrido el término de 30 días desde la emisión del mandato del Tribunal Federal de Apelaciones, sin que los demandantes recurrieran al Tribunal Supremo Federal, las Sentencias del Tribunal Federal para el Distrito de Puerto Rico y del Tribunal Federal de Apelaciones para el Primer Distrito desestimando por insuficientes las reclamaciones de los allí demandantes, se convirtieron en final, firme y obligatorias para las partes.

40. El 10 de enero de 2023, todas las partes en el caso del epígrafe solicitaron de este Honorable Tribunal que suspendiera los procedimientos en el presente caso, hasta que se dispusiera del caso federal, reconociendo y admitiendo que lo que ocurriera en el caso federal, era determinante para el resultado del caso del epígrafe.

41. En su informe pericial, el Dr. Jason James no presenta referencias médicas para establecer cuál era el estándar de cuidado aplicable a la fecha de los hechos, ni como el tratamiento brindado se apartó de las normas de cuidado requeridas por autoridades médicas reconocidas.

El foro primario adjudicó la controversia sobre si el informe pericial del Dr. James, perito de la parte apelante, es suficiente para establecer un caso *prima facie* de impericia médica y si procede aplicar la doctrina de Cosa juzgada en la modalidad de Impedimento colateral basado en las determinaciones y Opiniones del Juez Pedro Delgado en el caso federal, las cuales fueron confirmadas en su totalidad por el Primer Circuito de Apelaciones.

El TPI razonó que:

[D]icho informe no puede considerarse como una prueba pericial apropiada, ergo los demandantes carecen de evidencia para sostener sus alegaciones de impericia médica,

por lo que procedía la desestimación de la demanda en el foro federal. Por las razones aquí expuestas, no es necesario celebrar una vista en su fondo, toda vez que la parte demandante no cuenta con prueba pericial suficiente para establecer un caso *prima facie* de impericia médica. En adición, la aplicación de la doctrina de cosa juzgada implica que la sentencia emitida en el caso federal anterior es un impedimento para que se litiguen las mismas causas de acción, asuntos y controversias ya litigadas y adjudicadas, y así como aquéllas que pudieron haber sido litigadas y no lo fueron. Blás v. Hospital Guadalupe, 167 DPR 439, 446 (2012). Conforme lo anterior, se ordena la desestimación del caso con perjuicio[9].

Insatisfecho, el 29 de julio de 2024, la parte apelante acudió ante nos mediante recurso de *Apelación* y le imputó al TPI la comisión del siguiente error:

Erró el Honorable Tribunal al determinar que aplica la doctrina de cosa juzgada en la modalidad de impedimento colateral ya que entre el caso presentado en el foro federal y el de marras no existe identidad de partes.

El 27 de agosto de 2024, Quality presentó su *Oposición a Recurso de Apelación*. Los doctores Vélez y Mateo no comparecieron.

Con el beneficio de la comparecencia de la parte apelante y Quality, procedemos a exponer la normativa jurídica aplicable a los asuntos ante nuestra consideración.

**II.**

**-A-**

El Tribunal Supremo de Puerto Rico ha expresado en varias ocasiones que la sentencia sumaria es un remedio extraordinario y discrecional que sólo se debe conceder cuando no existe una controversia genuina de hechos materiales y lo que resta es aplicar el derecho[10]. En términos generales, al dictar sentencia sumaria, el tribunal deberá hacer lo siguiente:

(1) analizar los documentos que acompañan la solicitud de sentencia sumaria y los que se incluyen con la moción en oposición, así como aquellos que obren en el expediente del tribunal;

(2) determinar si el oponente de la moción controvirtió algún hecho material y esencial, o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos[11].

---

[9] Entrada #126 de SUMAC.
[10] *Maldonado v. Cruz*, 161 DPR 1, 39 (2004).
[11] *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004).

Analizados estos criterios, el tribunal no dictará sentencia sumaria cuando existan hechos materiales y esenciales controvertidos; cuando haya alegaciones afirmativas en la demanda que no han sido refutadas; cuando surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material y esencial, o cuando como cuestión de derecho, no procede[12]. La sentencia sumaria se puede dictar a favor o en contra de la parte que la solicita, según proceda en Derecho[13].

Por tratarse de un remedio discrecional, el uso del mecanismo de sentencia sumaria tiene que ser mesurado y solo procederá cuando el tribunal quede claramente convencido de que tiene ante sí documentos no controvertidos[14]. De tal manera, solo procede dictar sentencia sumaria cuando surge claramente que el promovido por la moción no puede prevalecer bajo ningún supuesto de hechos y que el tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia[15]. Cuando no existe una clara certeza sobre todos los hechos de la controversia, no procede una sentencia sumaria[16]. **Cualquier duda sobre la existencia de una controversia sobre los hechos materiales, debe resolverse contra la parte promovente**[17]. **Toda inferencia que se haga a base de los hechos y documentos que obren en los autos, debe tomarse desde el punto de vista más favorable al que se opone a la solicitud de sentencia sumaria**[18]. **Así pues, tomando en consideración que la sentencia sumaria es un remedio de carácter discrecional, "[e]l sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para**

---

[12] *Íd.*, págs. 333-334.
[13] *Maldonado v. Cruz, supra.*
[14] *Íd.*, pág. 334.
[15] *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714 (1986).
[16] *Metrop. de Préstamos v. López de Victoria,* 141 DPR 844 (1996).
[17] *Audiovisual Lang. v. Sist. Est. Natal Hnos.,* 144 DPR 563 (1997).
[18] Véase, *Piñero v. AAA,* 146 DPR 890 (1998); *Audiovisual Lang. v. Sist. Est. Natal Hnos., supra.*

**despojar a un litigante de 'su día en corte', principio elemental del debido proceso de ley"**[19].

Es importante mencionar que, este Tribunal utilizará los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una moción de sentencia sumaria[20]. Por consiguiente, los criterios que este foro intermedio debe tener presentes al atender la revisión de una sentencia sumaria son los siguientes:

1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil y la jurisprudencia le exigen al foro primario;

2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36;

3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos;

4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia[21].

**-B-**

Atinente al caso de autos, junto a la sentencia sumaria tradicional, existe una modalidad de solicitud de sentencia sumaria aplicable cuando el promovente alega que su adversario no cuenta con evidencia suficiente para prevalecer en el juicio. La llamada sentencia sumaria por insuficiencia de prueba fue reconocida por el Tribunal Supremo en *Medina v. M.S. & D. Química P.R., Inc.*[22]. Según esta decisión, después de que las partes hayan realizado un adecuado y apropiado descubrimiento de prueba, el promovente puede presentar una moción de sentencia sumaria en la que alegue que su adversario no cuenta con evidencia suficiente para, al menos, probar un elemento esencial e indispensable de su reclamación[23].

---

[19] *Roig Com. Bank v. Rosario Cirino*, 126 DPR 613, 617 (1990) (énfasis suplido).
[20] *Íd.*
[21] *Roldan Flores v. M Cuebas*, 199 DPR 664, 679 (2018).
[22] 135 DPR 716 (1994).
[23] *Íd.*, pág. 732.

Advertimos, sin embargo, que la jurisprudencia citada requiere que el promovente de la moción de sentencia sumaria por insuficiencia de prueba alegue y demuestre todos los elementos requeridos para que prevalezca una moción de sentencia sumaria "tradicional", más el elemento adicional de insuficiencia de la prueba. Esto se debe a que "[a] la modalidad de sentencia sumaria por insuficiencia de la prueba le aplican todas las normas y principios que tradicionalmente hemos indicado deben utilizarse por los tribunales al entender en una moción de sentencia sumaria"[24]. Si existiera duda sobre si hay prueba suficiente o no en torno a alguna controversia de hecho relevante, los tribunales deben denegar la solicitud de sentencia sumaria por ese fundamento[25].

El promovente de una moción de sentencia sumaria por insuficiencia de prueba no puede descansar solo en una simple alegación de que el demandante no tiene evidencia suficiente para probar su caso. Es decir, **tiene que demostrar que se ha llevado a cabo un descubrimiento de prueba completo, adecuado y apropiado. Ello significa que tiene que presentarle al tribunal suficientes elementos de juicio para poder evaluar la adecuacidad del descubrimiento realizado**[26]. No se considerará adecuado el descubrimiento de prueba cuando de un análisis de los documentos se refleja que la parte promovente ha dejado de auscultar alguna información que le pudiera haber conducido a obtener alguna prueba admisible[27].

Además, debe persuadir al juzgador de que: (1) no es necesario celebrar una vista evidenciaria o el juicio en su fondo; (2) el demandante no cuenta con suficiente evidencia para probar al menos un hecho esencial de su reclamación, y (3) procede la

---

[24] *Íd.*, pág. 734.
[25] *Íd.*
[26] *Íd.*, pág. 733.
[27] *Íd.*

desestimación de la reclamación como cuestión de derecho[28]. Si la parte promovente, luego de haber transcurrido un tiempo adecuado y razonable para el descubrimiento de prueba, puede demostrar que del récord del tribunal surge que la parte promovida no cuenta con evidencia suficiente para probar un elemento esencial de su caso sobre la cual tiene el peso de la prueba, procede que se dicte sentencia sumaria para desestimar la demanda[29].

Por su parte, para poder derrotar una moción de sentencia sumaria bajo la modalidad de la insuficiencia de prueba el promovido puede: (1) presentar una oposición conteniendo prueba admisible en evidencia, o prueba que pueda convertirse en admisible, o que dé lugar a prueba admisible, que demuestre la existencia de evidencia para probar los elementos esenciales de su caso; (2) alegar que hay prueba en el récord que puede convertirse en admisible que derrotaría la contención de insuficiencia; (3) exponer que la moción es prematura porque el descubrimiento es inadecuado, está a medias o no se ha realizado; o, (4) que el caso, por su naturaleza, no es uno conveniente para que se resuelva por el mecanismo de sentencia sumaria[30].

Sostiene el tratadista Echavarría Vargas que, "la solicitud de sentencia sumaria por insuficiencia de prueba solo debe prosperar en aquellas ocasiones en las cuales no exista ninguna prueba. No es un asunto de credibilidad o de fuerza de la prueba, sino de inexistencia de evidencia"[31].

**-C-**

En nuestro ordenamiento jurídico opera la doctrina de cosa juzgada o *res judicata*. Esta doctrina es una defensa que tiene el efecto de evitar que se litiguen nuevamente asuntos que fueron ya

---

[28] *Íd.*, págs. 733-34.
[29] *Íd.*
[30] *Íd.*, pág. 734.
[31] J. A. Echavarría Vargas, *Procedimiento Civil Puertorriqueño*, Colombia, 2012, pág. 221.

litigados y adjudicados o que pudieron haberse litigado y adjudicado en un pleito anterior[32]. Se fundamenta en el interés público del Estado de ponerle fin a los litigios y en proteger a los ciudadanos para que no se les someta en múltiples ocasiones a los rigores de un proceso judicial y se vean sujetos a incurrir en gastos innecesarios[33]. Podrá levantarse cuando exista una primera sentencia válida, la cual advino final y firme que adjudicó los hechos y resolvió la controversia en los méritos.

El derogado Art. 1204 del Código Civil de 1930[34] establecía los siguientes requisitos para levantar exitosamente la defensa de cosa juzgada: "Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron"[35]. La doctrina permanece inalterada a través de su uso jurisprudencial a pesar de su derogación por el Código Civil de 2020. Por consiguiente, **la doctrina de la cosa juzgada requiere que entre el caso anterior adjudicado de manera final y firme y el caso presente vivo exista la más perfecta identidad entre**: (1) las cosas, (2) las causas y **(3) los litigantes y la calidad en que lo fueron**[36].

Explicando el requisito de 'identidad entre litigantes y calidad en que lo fueron', el tratadista Rafael Hernández Colón expresa que "la identidad de los litigantes y la calidad con que lo fueron aplica a quienes intervinieron en el proceso **a nombre e interés propio**"[37]. No obstante, como sucede en la esfera federal[38], pueden surgir

---

[32] *SLG Szendrey Ramos v. Consejo de Titulares*, 184 DPR 133, 154 (2011).

[33] *Íd.*

[34] 31 LPRA sec. 3343.

[35] Art. 1204 del Código Civil de Puerto Rico de 1930 (31 LPRA sec. 3343) (derogado).

[36] *Pérez Droz v. ASR*, 184 DPR 313 (2012).

[37] R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6.ª ed., LexisNexis de Puerto Rico, 2017, pág. 55 (énfasis suplido).

[38] Véase, *Taylor v. Sturgell*, 553 US 880, 893-95 (2008).

situaciones en las cuales se traten como idénticas a partes en distintos litigios que en realidad no lo son; así sucederá, por ejemplo, cuando se entienda que la parte representó adecuadamente los intereses de la no-parte en un determinado litigio[39]. A fin de cuentas, la aplicación de la doctrina de cosa juzgada no es una automática, sino que depende de consideraciones de orden público y de su adecuación a los fines de la justicia.

Asimismo, la doctrina de impedimento colateral por sentencia, la cual emerge de la *res judicata*, "surte efectos cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y se determina mediante sentencia válida y final, [y] tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción distintas"[40]. Su diferencia con la doctrina de cosa juzgada radica en que la aplicación de la figura de impedimento colateral por sentencia no exige la identidad de causas, esto es, que el remedio solicitado en ambos litigios no tiene que ser el mismo[41]. Así, en caso de que por no haber identidad de causa no pueda levantarse la defensa de cosa juzgada, sí se podría levantar la modalidad de impedimento colateral.

No obstante, al igual que ocurre con la *res judicata*, es un requisito evaluar si el hecho adjudicado en una sentencia anterior fue **entre partes idénticas**[42]. De manera que, **no procede la doctrina de impedimento colateral por sentencia cuando la parte contra la cual se interpone no ha tenido la oportunidad de litigar previamente el asunto y no ha resultado ser la parte perdidosa en el litigio anterior**[43].

---

[39] *Íd.*

[40] *A & P General Contractors, Inc. v. Asociación Caná, Inc.,* 110 DPR 753, 762 (1981).

[41] *Rodríguez v. Colberg,* 131 DPR 212, 219 (1989).

[42] *Santini Casiano v. ELA*, 199 DPR 389, 409 (2017).

[43] *Beníquez v. Vargas*, 184 DPR 210, 226 (2012).

Por otra parte, la doctrina de cosa juzgada puede aplicar a sentencias interjurisdiccionales. Cuando se presente ante un tribunal estatal una sentencia del tribunal federal para formular la defensa de cosa juzgada, será necesario analizar el fundamento invocado que alcanzó la jurisdicción federal para determinar si aplica la doctrina de cosa juzgada federal o si, en su lugar, se emplea la doctrina estatal[44]. De tal manera, el criterio rector para entender cuál doctrina —si la federal o la estatal— ha de aplicar, es el siguiente:

> Así, en aquellas circunstancias en las que el Tribunal Federal asumió jurisdicción al amparo de la doctrina de cuestión federal, se aplicará la norma federal de cosa juzgada para impedir que se litigue un caso nuevamente en el foro estatal. En cambio, **en aquellas circunstancias en las que el foro federal asumió jurisdicción por diversidad de ciudadanía, se aplicará la norma estatal de cosa juzgada**[45].

Por lo tanto, si nos encontramos ante un dictamen del foro federal cuya jurisdicción se fundamentó en la diversidad de ciudadanía, como sucede en este caso[46], el derecho aplicable será el de la doctrina de cosa juzgada estatal que aquí hemos esbozado.

**-D-**

La responsabilidad civil extracontractual por actos de mala práctica de la medicina debido a la impericia o negligencia de un galeno surge del Art. 1536 de nuestro Código Civil.[47] Dicha norma reza de la siguiente manera: "La persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo"[48]. Así, para imponer responsabilidad bajo el Art. 1536 a un profesional de la medicina por impericia, es necesaria la concurrencia de los siguientes requisitos: (1) la existencia de un daño sufrido; (2) un acto u omisión

---

[44] *Comisión de Puertos de Mayagüez v. González Freyre*, 2023 TSPR 28, en la pág. 24; *Presidential v. Transcaribe*, 186 DPR 263, 278 (2012).

[45] *Comisión de Puertos de Mayagüez v. González Freyre, supra*, págs. 24-25; *Presidential v. Transcaribe, supra*, págs. 278-79.

[46] Apéndice, pág. 46.

[47] 31 LPRA secc. 10801.

[48] *Íd.*

culposo o negligente, y (3) un nexo causal entre el daño y la referida acción culposa o negligente[49].

Todo ser humano tiene un deber de cuidado que consiste en la obligación de anticipar el peligro de ocasionar daños cuya probabilidad es razonablemente previsible[50]. Ahora bien, existe un deber de cuidado médico exigible a los galenos el cual requiere que el médico "brinde a sus pacientes aquella atención médica que, a la luz de los modernos medios de comunicación y enseñanza, y conforme al estado de conocimiento de la ciencia y práctica prevalecientes de la medicina, satisfaga las exigencias generalmente reconocidas por la propia profesión médica"[51].

Por otra parte, al evaluar una causa de acción por impericia médica debemos tener presente que a los médicos los cobija una presunción de haber ejercido un grado razonable de cuidado y haber ofrecido un tratamiento adecuado[52]. "Para rebatir esta presunción, la parte demandante no puede descansar en una mera posibilidad de que el daño se debió al incumplimiento por parte del médico de su obligación profesional"[53]. El estándar probatorio para rebatir dicha presunción es el de preponderancia de la prueba[54]. Así, un reclamante debe demostrar que el médico fue negligente y que dicha conducta negligente fue el factor que con mayor probabilidad causó los daños para rebatir la presunción de corrección del médico[55].

**Es requisito ineludible que el reclamante rebata la presunción que favorece al médico a través de prueba pericial**[56]. Como puede observarse, en los casos de impericia médica, el

---

[49] *Monllor v. Soc. de Gananciales*, 138 DPR 600 (1995).
[50] *López v. Dr. Cañizares*, 163 DPR 119, 132 (2004).
[51] *Arrieta v. De la Vega*, 165 DPR 538, 549 (2005). Véase, *López v. Cañizares, supra*, pág.133 (2004); *Sepúlveda de Arrieta v. Barreto*, 137 DPR 735, 759 (1994).
[52] *Arrieta v. De la Vega, supra*, pág. 549. Véase, *López v. Cañizares, supra*, pág. 134; *Rodríguez Crespo v. Hernández*, 121 DPR 639 (1988).
[53] *Arrieta v. De la Vega, supra*, págs. 549-550.
[54] *López v. Cañizares, supra*, págs. 134-135; *Rodríguez Crespo v. Hernández, supra*.
[55] *Rivera v. ELA*, 99 DPR 890, 899 (1971).
[56] *López v. Cañizares, supra*, pág. 133.

*quantum* probatorio de preponderancia de la prueba es más riguroso que el de una acción ordinaria por daños y perjuicios al amparo del Art. 1536, ya que la prueba pericial resulta ser un elemento enormemente influyente, aunque no decisivo[57]. Conforme a la normativa vigente, **para establecer un caso *prima facie* de impericia médica se tiene que presentar prueba pericial sobre: (1) las normas mínimas de conocimiento y cuidado médico aplicables a los generalistas o a los especialistas; (2) demostrar que el demandado incumplió con estas normas en el tratamiento del paciente, y (3) demostrar que esta fue la causa de la lesión sufrida por el paciente**[58].

### III.

En el caso ante nuestra consideración, debemos analizar si el TPI incide al acoger, por medio de la aplicación de la defensa de cosa juzgada, en su modalidad de impedimento colateral, un memorando y orden final del Tribunal Federal para el Distrito de Puerto Rico, el cual determina que el informe pericial preparado por el Dr. James es prueba inadmisible por ser insuficiente para sostener una reclamación de impericia médica.

La parte apelante solicita la revocación de la *Sentencia* que declaró Ha Lugar la *Moción Solicitando Sentencia Sumaria y Moción Solicitando se dicte Sentencia Sumaria de acuerdo a la Regla 36 de Procedimiento Civil presentadas* respectivamente por Quality como por la Dra. Vélez y el Dr. Mateo. La parte apelante arguye que incidió el foro primario al aplicar la doctrina de cosa juzgada en modalidad de impedimento colateral por no existir identidad de partes.

Previo a iniciar el análisis del señalamiento de error, nos compete realizar un análisis de novo[59]. Ello, recordamos, es un

---

[57] Véase, *Cirino Vizcarrondo v. Clínica Gubern*, 129 DPR 977, 1003 (1992).

[58] *López v. Cañizares, supra*, pág. 134; *Rodríguez Crespo v. Hernández, supra*, págs. 650.

[59] *Meléndez González et al. v. M. Cuebas, supra.*

requisito de umbral a la revisión de una sentencia dictada sumariamente.

Nuestro Tribunal Supremo ha expresado que el tribunal apelativo, como foro revisor, utilizará los mismos criterios que, el foro primario al determinar si procede una solicitud de sentencia sumaria. Sin embargo, el foro revisor solo considerará aquellos documentos presentados ante el foro primario, determinará si existe o no una controversia de hechos esenciales y si se aplicó el Derecho correctamente[60].

Como indicamos, el mecanismo de sentencia sumaria es uno discrecional en el cual el tribunal, una vez determina que no existe una controversia genuina de hechos que tenga que ser dirimida en vista evidenciaria y que lo único que falta es aplicar el derecho, procederá entonces a dictar la sentencia solicitada.

Del análisis realizado, surge que las mociones de sentencia sumaria presentadas por Quality, la Dra. Vélez y el Dr. Mateo, cumplieron con el crisol de la normativa jurisprudencial[61]. No obstante, la parte apelante no cumplió con la norma establecida, puesto que no sustentó los hechos que no están en controversia con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal. Sin embargo, hay que puntualizar que **es el análisis de la existencia o no de controversias esenciales y pertinentes** lo que determina si procede dictar sentencia sumaria y no el que la parte promovida haya cumplido con las formalidades que exigen las Reglas en su oposición a la solicitud. Es decir, el defecto de una oposición a la

---

[60] *Reyes Sánchez v Eaton Electrical*, 189 DPR 586, 596 (2013).
[61] Cabe destacar que la parte apelada cumplió con los criterios jurisprudenciales sobre sentencia sumaria, en específico presentaron prueba relacionada con la defensa de cosa juzgada.

moción de sentencia sumaria no equivale a la concesión automática del remedio solicitado. **Ello, debido a que la concesión de la sentencia sumaria tiene que proceder conforme al derecho sustantivo aplicable**[62].

En cumplimiento con la normativa vigente sobre la sentencia sumaria, evaluamos de *novo* las determinaciones de hechos esbozadas por el TPI. Acogemos las siguientes determinaciones de hechos por no estar en controversia: (1), (2), (3), (4), (5), (6), (7), (8), (9), (19), (11), (12), (13), (14), (19) (20), (21), (22), (23) (24), (25), (26), (27), (28), (29), (39), (31), (32), (33), (34) (35), (36), (37), (39), (40) y (41).

Ahora bien, el foro primario determinó que "*no es necesario celebrar una vista en su fondo, toda vez que la parte <u>demandante no cuenta con prueba pericial suficiente</u> para establecer un caso prima facie de impericia médica*", esto, sustentado por la determinación realizada en el foro federal.

Así pues, esto nos lleva a atender el error imputado por la parte apelante y que está bajo nuestra consideración sobre si la aplicación de la defensa de cosa juzgada en su modalidad de impedimento colateral fue correcta o no en derecho, entrelazada con la suficiencia de la prueba que se presenta en las mociones de sentencia sumaria.

La parte apelante sostiene que incide el TPI al desestimar la Demanda presentada porque es improcedente aplicar la doctrina de cosa juzgada en la modalidad de impedimento colateral por no existir identidad de partes, ya que los reclamantes del caso federal no son los litigantes del caso de autos ni tampoco son causahabientes ni están unidos por vínculos de solidaridad.

---

[62] *Ortiz v. Holsum de P. R., Inc.*, 190 DPR 511, 525 (2014).

En respuesta, Quality, la Dra. Vélez y el Dr. Mateo, consideran que la defensa de cosa juzgada, en su modalidad de impedimento colateral por sentencia, no exige identidad de las partes litigantes.

Luego de evaluar el derecho antes expuesto en conjunto con los hechos materiales del caso de epígrafe, este Foro concluye que la defensa de cosa juzgada, en su modalidad de impedimento colateral por sentencia, no es aplicable al caso ante nos. Veamos.

De los autos, surge que hay dos reclamaciones con la más perfecta identidad entre causas y cosas, pero no entre los litigantes y la calidad en que lo fueron, como requiere la doctrina de cosa juzgada y su modalidad de impedimento colateral por sentencia. Aquí, hay un caso ya adjudicado de manera final y firme en el foro federal (Civ. Núm. 18-1287(PAD), en el cual constan los demandantes Lourdes Rivera Rodríguez, María de los Ángeles Ramos Rodríguez y Rafael Pacheco Rodríguez, todos hijos de la fenecida señora Ramona Rodríguez. También, está ante nuestra consideración el caso de marras (Civil. Núm. PO2019CV00026), el cual aún no está adjudicado de manera firme y fue instado por los demandantes Carmen Suro Rodríguez, Miguel Rivera Rodríguez y Luis Rivera Rodríguez, todos hijos de la fenecida señora Ramona Rodríguez.

Conforme a las normas doctrinales discutidas, para que se configure la defensa de cosa juzgada y su modalidad de impedimento colateral, es necesario que entre el caso resuelto por la sentencia anterior y aquel en que la defensa es invocada, concurra la más perfecta identidad entre las personas de los litigantes y la calidad con que lo fueron. Esto significa que, quienes intervinieron como litigantes en ambos procesos lo hagan a nombre e interés propio[63]. En la presente controversia, existen dos casos con partes

---

[63] R. Hernández Colón, *supra,* pág. 55.

demandantes distintas que representan su propio interés a nombre propio. Entre las partes de ambos casos no hay un vínculo que permita una sustitución de parte por ser causahabientes, representantes, cesionarios ni ninguna otra condición que permita inferir el traslado de interés. Permitir la aplicación de la defensa de impedimento colateral por sentencia equivaldría a privar a la parte apelante del caso de marras de proseguir su causa de acción sin haber tenido la oportunidad de litigar previamente el asunto como lo requiere nuestro ordenamiento jurídico[64].

Así pues, colegimos que, no procede la aplicación de la doctrina de cosa juzgada ni su modalidad de impedimento colateral por sentencia, ya que falta un elemento esencial para su configuración: la identidad entre partes y la calidad en que lo fueron. Indudablemente, el error fue cometido.

No obstante, en este caso, a pesar de que la parte apelante trajo un solo error, entiéndase, la aplicación errónea de cosa juzgada en la modalidad de impedimento colateral, debemos evaluar todos los fundamentos que dan razón a la *Sentencia* del TPI. En específico, la determinación del foro primario sobre que *la parte **demandante no cuenta con prueba pericial suficiente** para establecer un caso prima facie de impericia médica.*

Fíjese que, en sus respectivas mociones de sentencia sumaria, los promoventes aquí apelados adujeron en esencia el mismo argumento: la causa de acción de la parte apelante ha de desestimarse puesto que no cuenta con prueba pericial suficiente para establecer un caso *prima facie* de impericia médica, por lo cual, se hace innecesaria la celebración de un juicio.

---

[64] Véase, *Beníquez v. Vargas*, *supra*, pág. 226.

En respuesta, el promovido, aquí apelante, ripostó que el momento oportuno para evaluar el informe pericial no era el presente.

Luego de evaluar el derecho antes expuesto en conjunto con los autos del caso de epígrafe, este Tribunal concluye que el foro primario determinó prematuramente la insuficiencia del informe pericial para entablar una causa de acción *prima facie* por impericia médica al amparo del Art. 1536 del Código Civil de 2020[65]. Veamos.

Indudablemente, la parte apelada promovió ante el foro inferior lo que nuestra jurisprudencia reconoce como una "moción de sentencia sumaria por insuficiencia de la prueba", puesto que la misma se sustentó (aparte de la defensa de cosa juzgada) en que el informe pericial de la parte apelante no logra satisfacer los requisitos jurisprudenciales para entablar *prima facie* una causa de acción aquiliana.

Conforme a la normativa aplicable expuesta, el promovente de una moción de sentencia sumaria en su modalidad de insuficiencia de prueba no puede descansar solo en una simple alegación de que el demandante no tiene evidencia suficiente para probar su caso. Es decir, tiene que demostrar que **se ha llevado a cabo un descubrimiento de prueba completo, adecuado y apropiado**[66]. Esto significa que tiene que presentarle al tribunal suficientes elementos de juicio para poder evaluar la idoneidad del descubrimiento realizado según establecido por *Medina Morales v. M.S. & D. Química P.R.*[67]. Aquí, la parte apelada no cumplió con este requisito base para poder evaluar esta modalidad de moción de

---

[65] 31 LPRA sec. 10801.

[66] Surge de la Sentencia apelada en el inciso 25 de las determinaciones de hechos incontrovertidos que, en el caso ante el foro federal, **al concluir el descubrimiento de prueba**, los demandados Quality Health Services of PR, haciendo negocios como Hospital San Cristóbal, y el Dr. Mateo radicaron una moción en limine solicitando la exclusión del Dr. James, el perito de los Demandantes, y la Dra. Vélez radicó moción uniéndose a dicha solicitud.

[67] *Medina Morales v. M.S. & D. Química P.R., Inc.*, *supra*, pág. 733. Véase, *Pérez v. El Vocero*, 149 DPR 427 (1999).

sentencia sumaria, es decir, no puso al Tribunal en condiciones de evaluar la idoneidad del descubrimiento de prueba realizado.

Este Tribunal, al igual que el foro inferior, no cuenta con las condiciones necesarias para entender si el descubrimiento de prueba efectuado por las partes ha sido uno completo, adecuado y apropiado. Asimismo, de los autos no se despliega que las partes hayan culminado el descubrimiento de prueba[68]. Incluso, tampoco se devela que las partes se reunieron para preparar y presentar un Informe Preliminar de Conferencia con Antelación a Juicio[69], ni que se haya celebrado una Conferencia con Antelación a Juicio en el cual se discuta el Informe Preliminar[70]. Mucho menos logramos auscultar una Orden del TPI en la cual se dicte lo acordado y dispuesto en la Conferencia con Antelación a Juicio para que gobierne el curso subsiguiente del pleito. Por lo cual, es forzoso inferir que el descubrimiento de prueba en este caso no ha concluido.

Con ello, apuntalamos que no es el momento apropiado para evaluar si el informe pericial del perito, Dr. James, es suficiente para establecer una causa de acción legítima por impericia médica que rebatiera la presunción de corrección que cobija a los médicos apelados. Tampoco era el momento para aquilatar el valor probatorio del informe pericial.

Ante este cuadro, es innecesario perpetuar el análisis sobre si la parte apelada fundamentó correctamente su moción de sentencia sumaria en la modalidad de insuficiencia de prueba, puesto que no cumple con el requisito base de poner al juzgador en condiciones

---

[68] La única mención en el expediente electrónico sobre el descubrimiento de prueba es la Minuta de 31 de marzo de 2022, entrada # 79, ese mismo día se calendariza la vista para la conferencia con antelación a juicio, la cual fue suspendida.
[69] 32 LPRA Ap. V, R. 37.1. 37.5.
[70] 32 LPRA Ap. V, R. 37.5.

para examinar si el descubrimiento de prueba ha sido uno completo, adecuado y apropiado.

Por su parte, nuestro Tribunal Supremo ha expuesto una serie de tipos de casos los cuales, de ordinario, no deben resolverse por la vía sumaria, entre los cuales se encuentran los casos de daños y perjuicios que planteen una controversia por alegada negligencia[71]. En cumplimiento con esta inclinación, la decisión que tomamos hoy no es más que un desenlace lógico de nuestra jurisprudencia relacionada a la impericia médica. Como ha expresado nuestro Máximo Foro Judicial: "Al cumplir con nuestra función revisora en casos de impericia médica, nuestra decisión debe estar fundada en la prueba vertida en el juicio por los peritos y en la prueba documental"[72]. Toda la jurisprudencia examinada en la cual está en la balanza la presunción de corrección a favor del galeno y la tarea del reclamante de establecer una causa de acción *prima facie*, se basa en casos donde el descubrimiento de prueba ha concluido y la prueba ha sido desfilada y apreciada en una vista o juicio en su fondo[73].

Por todo lo cual, es forzoso concluir que, en esta fase de los procesos, el Tribunal no debe conceder la moción de sentencia sumaria para desestimar la reclamación en tanto que existe duda de la idoneidad del descubrimiento de prueba llevado a cabo y, por ende, de si la parte apelante no tiene derecho a recobrar en ninguna circunstancia que resulte discernible de la prueba. Así las cosas, por las razones antes expuestas, este Tribunal revoca la *Sentencia* apelada.

---

[71] *Cuadrado Lugo v. Santiago Rodríguez*, 126 DPR 272, 279 (1990).

[72] *Rodríguez Crespo v. Hernández, supra*, pág. 649 (1988).

[73] Véase, e.g., *Arrieta v. De la Vega*, 165 DPR 538 (2005); *López v. Dr. Canizares*, 163 DPR 119 (2004); *Ramos Robles v. García Vicario*, 134 DPR 969 (1993); *Rodríguez Crespo v. Hernández*, 121 DPR 639 (1988); *Rodríguez Retamar v. Maldonado*, 100 DPR 662 (1972); *Ramos Orengo v. La Capital*, 88 DPR 315 (1963); *Sáez v. Municipio de Ponce*, 84 DPR 535 (1962); *Rivera v. Dunscombe*, 73 DPR 819 (1952).

Tomado el cuadro fáctico a la luz más favorable para el promovido y no habiendo constancia de un descubrimiento de prueba adecuado, no es el momento oportuno para afirmar que no existen hechos materiales que puedan estar en verdadera controversia. Por todo lo expuesto, resolvemos que el TPI erró al dictar *Sentencia,* por la vía sumaria, antes de concluir con el descubrimiento de prueba y aplicar incorrectamente la defensa de cosa juzgada en su modalidad de impedimento colateral.

**IV.**

Por los fundamentos antes expuestos, **revocamos** la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones